## STATE OF INDIANA, EX REL. SIMPSON ET AL. *v.* MEEKER ET AL.

[No. 22,593. Filed July 2, 1914. Rehearing denied October 8, 1914.]

1. MANDAMUS.—*Right to Relief.*—A writ of mandate is available only where the neglect of a positive duty is shown, and will not be issued to compel a public officer to act, when, under the law, the particular action is made discretionary with him. p. 243.

2. STATUTES.— *Construction.*— *"Shall".*— Generally it is the presumption that the word "shall", as used in a given law, is to be construed in an imperative sense, unless a different legislative intent clearly appears from the context or manifest purpose of the act as a whole. p. 243.

3. CONSTITUTIONAL LAW.—*Class Legislation.*—*Vocational Education Law.*—In view of §1, Art. 8 of the Constitution making it the duty of the legislature to encourage, by all suitable means, moral, intellectual, scientific and agricultural improvement, and to provide by law for a general and uniform system of public schools, and in view of the purpose of the act of 1913, known as the Vocational Education Law, to meet existing industrial and social problems by an adaptation of the public schools to the needs of the people, §12 of the act (§6641l Burns 1914, Acts 1913 p. 37) providing for the appointment of a county agent to assist in giving practical education in agriculture, and for making appropriations of money for the purpose, is not invalid as conferring a special privilege on an arbitrary class of persons, since, while it provides only for agricultural education, other sections of the act provide for vocational education along other lines. pp. 244, 248.

State, ex rel. *v.* Meeker—182 Ind. 240.

4. STATUTES.—*Uniformity.—Vocational Education Law.*—The Vocational Education Law (§6641a *et seq.* Burns 1914, Acts 1913 p. 37) is designed to operate uniformly in all parts of the State where the same circumstances and conditions exist, and the uniformity of operation is not destroyed by the mere fact that §12 of the act (§66411 Burns 1914) providing for county agents to assist in giving practical education in agriculture, designates a different method for determining the need for that kind of education. p. 247.

5. STATUTES.—*Vocational Education Law.—Taxation.—Counties.*— Section 12 of the Vocational Education Law (§66411 Burns 1914, Acts 1913 p. 37) requiring county councils under certain circumstances to appropriate money for the employment of a county agent to assist in giving practical education in agriculture, is not invalid as causing an increase of the county tax in violation of the rule of local self-government, since the county has no vested right of local self-government, but exists only as a unit and agent of the State. p. 247.

6. TAXATION.—*Uniformity.—Vocational Education Law.*—Although the operation of §12 of the Vocational Education Law (§66411 Burns 1914, Acts 1913 p. 37) may affect the tax rate of the several counties of the State in a varying degree, such result is not due to any imperfection in the act itself, and it is not invalid as destroying the uniformity of taxation, since a tax for county purposes satisfies the requirement of uniformity if it is uniform throughout the county. p. 248.

7. MANDAMUS.—*Compelling Appropriation of Money.—Vocational Education Law.*—Section 12 of the Vocational Education Law (§66411 Burns 1914, Acts 1913 p. 37) providing that the county council shall, upon the filing of a petition for the appointment of a county agent to assist in agricultural education, make a certain appropriation of money for that purpose, is mandatory, and hence mandamus will lie to compel the council to make the appropriation. p. 248.

8. COUNTIES.—*County Council.—Appropriations.—Power of Legislature.*—Although §5932 Burns 1914, Acts 1899 p. 343, places the authority to make appropriations from the county treasury in the county council, the legislature may nevertheless require the council, under stated conditions, to make such an appropriation without reference to the usual procedure under the county council act. p. 249.

From Fountain Circuit Court; *I. E. Schoonover,* Judge.

Action in mandamus by the State of Indiana, on the relation of James A. Simpson and others, against Theodore M.

Vol. 182—16

Meeker and others, as County Councilmen of Fountain County. From a judgment for defendants, the relators appeal. *Reversed.*

*Thomas M. Honan,* Attorney-General, *Joseph H. Stahl, Forrest E. Livengood* and *Valentine E. Livengood,* for appellants.

*A. T. Livengood, Courtney W. Dice* and *Lucas Nebeker,* for appellees.

SPENCER, J.—This is an action in mandamus wherein appellants seek to compel appellees, as members of the county council of Fountain County, to make an appropriation of $1,500 under the provisions of §12 of the Vocational Education Law of 1913 (Acts 1913 p. 43, §66411 Burns 1914). Appellees' demurrer to the complaint was sustained and that ruling is now challenged by this appeal.

Section 12 of the act in question reads as follows: "Whenever twenty or more residents of a county, who are actively interested in agriculture, shall file a petition with the county board of education for a county agent, together with a deposit of $500.00 to be used in defraying expenses of such agent, the county board of education shall file said petition, within thirty days of its receipt, with the county council, which body shall, upon receipt of such petition, appropriate annually the sum of $1,500.00 to be used in paying the salary and other expenses of said county agent. When the county appropriation has been made the county board of education shall apply to Purdue university for the appointment of a county agent whose appointment shall be made annually and be subject to the approval of the county board of education, and the state board of education. When such appointment has been made, there shall be paid annually from the state fund provided for in this act, to Purdue university, to be paid to the county providing for a county agent, an amount sufficient to pay one-half the annual salary of the county agent appointed as herein provided: *Provided,* That not

more than $1,000 shall be appropriated to any one county: *Provided, further,* That not more than thirty (30) counties during the year ending September 30, 1914; and sixty (60) counties during the year ending September 30, 1915, shall be entitled to state aid. It shall be the duty of such agent, under the supervision of Purdue university, to co-operate with farmers' institutes, farmers' clubs and other organizations, conduct practical farm demonstrations, boys' and girls' clubs and contest work and other movements for the advancement of agriculture and country life and to give advice to farmers on practical farm problems and aid the county superintendent of schools and the teachers in giving practical education in agriculture and domestic science. The county board of education is hereby authorized to file monthly bills covering salary and expenses of county agent, the same to be approved by Purdue university, with the county auditor who shall draw his warrant or warrants on the county treasurer for the payment of same.''

As appellants concede, a writ of mandate is available only where the neglect of a positive duty is shown and will not be issued to compel a public officer to act when under the law, such action is made discretionary with said officer. The first question, then, which we have to consider involves a construction of the word ''shall'' as used in the above section. As a general rule of statutory interpretation the presumption is that the word ''shall'', as used in any given law, is to be construed in an imperative sense, rather than directory, and this presumption will control unless it appears clearly from the context or from the manifest purpose of the act as a whole that the legislature intended in the particular instance that a different construction should be given to the word. *Morrison* v. *State, ex rel.* (1914), 181 Ind. 544; *Robertson* v. *State, ex rel.* (1887), 109 Ind. 79; *Board, etc.* v. *People's Nat. Bank* (1909), 44 Ind. App. 578; 25 Am. and Eng. Ency. Law (2d ed.) 633.

We pass, therefore, to the second question presented by the appeal since it involves a consideration of the purposes of the legislation before us and of the language used in its several sections. Appellees take the position that §12, *supra,* is unconstitutional and void for the reasons: (1) that it is special and local in its operation; (2) that it creates a lack of uniformity in the common-school system; (3) that it vests in Purdue University the power to appoint local officers and agents for the county and thus tends to deprive such county of the right of local self-government; and (4) that it makes provision for an increased expenditure of revenue which necessitates a higher general tax and thus places an additional burden on one part of the people for the benefit of another part. Appellants, on the other hand, contend (1) that it is for the legislature to determine how and by what instrumentalities the common-school system shall be administered and carried into effect; (2) that it is only in a qualified sense that any law can be said to be of uniform operation throughout the State; (3) that all officers whose appointments are not specially provided for in the Constitution shall be chosen in such manner as the legislature may deem expedient; and (4) that the school fund may be unequally distributed by statutory authority without violating the provisions of the Constitution. Counsel on either side have presented in a clear and instructive manner their views on the several propositions advanced.

The matter of education has long been recognized as a legitimate function of the State and the framers of our Constitution, recognizing that "Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government", made it the duty of the legislature "to encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement, and to provide, by law, for a general and uniform system of common schools, wherein tuition shall be without charge, and equally open to all." Constitution

of Indiana, Art. 8, §1. Pursuant to this direction there has been fostered and developed in Indiana a system of public schools which has given to the State a high rank educationally and has encouraged the spread of general learning among its people. But with the breaking down of the apprentice system and other great changes in economic and social conditions which have marked the growth of this country in recent years, there has come a recognition on the part of educators and laymen alike that tremendous industrial forces have been developing among the people without adequate coöperation on the part of the public schools. This fact finds expression in the definite movement of the past decade toward state-encouraged vocational education, a movement which, in its essence, is an attempt to meet pressing industrial and social problems, an adaptation of the public schools to the needs of the people, and an admission that their function is economic as well as educational. No less emphasis is placed on subjects whose chief value is to increase general ability but more attention is paid toward providing that specific training which must be secured by those who are to become successful members of the artisan and agricultural elements of society.

In order properly to understand the demand, if any, for industrial and agricultural education in Indiana, the legislature, in 1911, provided a commission of seven persons, representing the manufacturing, labor, agricultural and educational interests of the State, whose duties were to investigate the need for the education of persons employed or aiming at employment in the different industries of the State, to ascertain how far the needs were met by the existing institutions, to suggest such new forms of educational effort as might seem advisable, and to determine in what manner further legislation should be adapted to the conditions which were found to exist. Acts 1911 p. 407. The report of this commission, presented to the legislature in 1913, forms the basis of the present statute. The law pro-

vides that any school city, town or township, or combination thereof, may, through the proper officers, establish vocational schools or departments for industrial, agricultural and domestic science education in the same manner as other schools and departments are now established, and authorizes elementary instruction covering the same field as a part of the regular school course. It also authorizes the State Board of Education to outline a course of study in agriculture, domestic science and industrial work for use in the high schools of the State. That board is reorganized so as to include among its members "three persons actively interested in, and of known sympathy with, vocational education, one of whom shall be a representative of employes and one of employers", and is charged with the supervision of the new system as it is established. The remaining sections of the act, other than §12, *supra,* have to do with the appointment of the officials and teachers whose offices are created ·by the act, with the regulations concerning the admission to vocational schools and attendance therein, and with the application of State funds to the purposes of the statute. This statement, in substance, of the act as a whole is sufficient to make clear its purpose and to indicate its scope. It is designed to meet the special needs of those who are or are to become wage earners and for that reason must be broad enough to include within its benefits persons interested in a wide and varied field of industries. Of necessity, the training of one about to engage in agricultural pursuits will differ materially from that of the artisan and different methods of instructions and different sources of information must be supplied in the two instances. Section 12 of the act in question provides a plan whereby those actively interested in agriculture may become beneficiaries of the work done by and through the agricultural department of Purdue University and in determining the validity of its provisions regard must be had not only to the section itself but also to the purpose of the entire act of which it is a

part. Thus considered, it is clear that §12 does not confer a special privilege on an arbitrary class of persons but supplies the method whereby the benefits of the general scheme of vocational education are made available to one group of its beneficiaries. The fact that the plan adopted for the appropriation and disbursement of funds to be used in carrying out the provisions of this section differs from that authorized in other sections of the act for the advancement of industrial and domestic science education, is not sufficient to render §12 invalid. The demand for vocational education in different parts of the State will of necessity vary in accordance with the economic needs of the people—the agricultural community presenting a situation which differs greatly from that of an industrial center. To meet this condition the legislature has authorized the school officials of any school city, town or township, or combination thereof, to establish such schools for vocational education as the needs of the particular community may require and, within certain limits, to levy the tax necessary to maintain such schools. The law as a whole is thus designed to

4. operate uniformly in all parts of the State where the same circumstances and conditions exist, and the provisions of §12 create no exception to this rule because they designate a different method of determining the need for instruction in agriculture. We cannot agree with ap-

5. pellees' contention that the legislature is without power to prescribe that twenty residents of a county may secure the appointment of a county agent under §12 and thereby increase the county tax. It must be borne in mind that the county is not an independent municipality with vested rights of local self-government but exists only as a unit and agent of the State. Its officers perform local duties for the sovereign body, and the legislature may control such officers in the levy and collection of the county tax so long as such control is exercised in the same manner wherever the conditions are the same. 11 Cyc. 582, and cases

cited. It is also within the power of the General Assembly, in providing an educational system of this character, to determine that the presence in any county of a given number of residents who are actively interested in agriculture shall be sufficient to entitle them to petition for and receive the services of a county agent. The legislature may further determine the manner of appointing said agent and the other officials whose offices are created by the act. The whole question is legislative and not judicial and is one with which this court will not concern itself further than to see that no provision of the Constitution has been violated.

While it is true that the operation of this law may, in a varying degree, affect the tax rate of the several counties of the State, that fact is not due to any imperfection in the law itself. A perfect and equal system of taxation throughout an entire state will remain an unattainable good as long as laws and men are imperfect, and as long as counties, townships or other political divisions are unequal in wealth or of unequal size. *State, ex rel.* v. *Smith* (1902), 128 Ind. 543, 547, 63 L. R. A. 116; *Gilson* v. *Board, etc.* (1891), 128 Ind. 65, 11 L. R. A. 835; *Bullock* v. *Billheimer* (1911), 175 Ind. 428. It is sufficient if a tax for State purposes is uniform throughout the State; or if for county or township purposes, then it must be uniform throughout the county or township. *Board, etc.* v. *State, ex rel.* (1900), 155 Ind. 604; *Gilson* v. *Board, etc., supra,* 69; *Bright* v. *McCullough* (1866), 27 Ind. 223. After a careful consideration of each of the propositions presented, we are convinced that the law before us was within the power of the legislature to enact, and we so hold.

We are convinced also that the word "shall" was used by the legislature in §12 in its imperative sense and we see no reason why it should not be so construed. Although it is true that the county council alone is authorized to make appropriations of money to be paid out of the county treasury (§5932 Burns 1914, Acts 1899 p.

343), that fact does not prohibit the legislature from
8. requiring the council, under stated conditions, to
make such an appropriation and without reference
to the usual procedure under the county council act. The
members of such council are officers of a political subdivision of the State and are subject to the mandate of the sovereign power.

For the reasons above stated we hold that the trial court
erred in sustaining appellees' demurrer to the complaint.
Judgment reversed, with instructions to overrule appellees'
demurrer to the complaint, and for further proceedings in
accordance with this opinion.

NOTE.—Reported in 105 N. E. 906. As to the purposes for which
public money may be used, see 14 L R. A. 474. As to class legislation as repugnant to constitutional law, see 25 Am. St. 873.
See, also, under (1) 26 Cyc. 162, 158; (2) 36 Cyc. 1160; (3) 8
Cyc. 1051; (4) 36 Cyc. 992; (5) 8 Cyc. 902; (6) 37 Cyc. 734, 735;
(7) 26 Cyc. 304; (8) 11 Cyc. 511.