THE INDIANA STATE PERSONNEL BOARD ET AL. *v.*
LAVERNA M. GALLOWAY ET AL.

[No. 2-174A8. Filed March 2, 1976. Rehearing denied April 7, 1976. Transfer denied September 13, 1976.]

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellant.

*Marshall E. Williams,* of Indianapolis, *Frank E. Gilkison, White Pierce Beasley & Gilkison,* of Muncie, for appellees.

WHITE, J.—The defendant-appellants, The Indiana Personnel Board, its members, the Director of State Personnel, the Indiana Department of Administration and its Commissioner, all of whom are hereinafter referred to collectively as "State", bring this appeal from a declaratory judgment in favor of plaintiff-appellees who are merit employees of various county welfare departments. The judgment declares that "the salary and pay plan adopted in 1971 . . . is in violation of the State Personnel Act [Ind. Ann. Stat. §§ 4-15-2-1 through 4-15-2-46 (Burns Code Ed., 1974, and 1975 Supp.)], in that . . . [it] provides for a separate schedule of rates of pay for employees of county welfare departments . . . unequal to the schedule of rates of pay for all other employees in state service."

The State concedes that its salary plan provides schedules of rates of pay for employees of county welfare departments separate and different from the pay plan for the employees of the State welfare department. It also concedes that the salary minimums for job classifications in the county plan

are lower than those for the same classifications in the State plan. It contends, however, that this duality of plans does not violate the State Personnel Act. On the contrary, "Defendants assert that their classification and subsequent administration of the statutes and regulations is in conformance with Rule 4-2 because the 'State Personnel Act' was enacted for a reasonable and logical purpose, that of establishing a 'merit system' for employees with equal pay for equal work all things being equal, that the system they establish for a job classification plan and a pay plan was reasonable and logical considering the source of funds from which salaries are derived, and that they have treated and continue to treat all employees within the counties and State classifications of service in the same way." (Appellants' brief, p. 26.)

Although neither of the parties' briefs expressly so states, the totality of both makes it clear that the Rule 4-2, to which the State has alluded above, epitomizes the statutory requirements which the State's dual pay plan must meet to be held valid. The origin and pertinent provisions of that rule are set forth in the declaratory judgment's preliminary recital No. 18, as follows:

"18. That pursuant to the provisions of the State Personnel Act, the Indiana Personnel Board duly adopted and promulgated rules prescribing the methods and standards to be used in and necessary and advisable to the administration of the scientific merit system created in said Act, including Rule 4-2, concerning the pay plan, which provides in part as follows:

" 'Purposes and Objectives

" 'All regulations affecting administration of the pay plan shall be designed, in accordance with the intents and purposes of Section 1 of the State Personnel Act, as amended, to guarantee equal opportunities and equal incentives for entrances to the service, equal pay for comparable work in the several agencies of the State Service, and opportunity for advancement according to fair standards of accomplishment.' "

Reduced to its simplest terms, the basic issue before the trial court was whether the dual pay plan provides "equal pay for comparable work in the several agencies of the State Service."

That issue was resolved by the trial court as follows:

"19. Each of the Plaintiffs are county welfare department employees and as such are merit employees in the 'state service' under the State Personnel Act, and the respective job classifications created by the Defendants for Plaintiffs and other merit employees of county welfare departments in 'state service' and for all other state employees under the merit system in 'state service' have been created by Defendants pursuant to the applicable statute (now Burns 60-1310(a), IC 4-15-2-9(a)) ; each such classification recognizes that a county welfare department merit employee in each particular class has equal or substantially equal duties, authority and responsibility as a state merit employee in the same class.

"20. Commencing with the salary and pay plan adopted in 1967 and with each plan adopted thereafter, including the plan adopted in 1971, effective in November, 1971, and currently in effect the Defendants adopted and have administered for each class of positions in the 'state service' a separate salary and pay plan for county welfare employees in the 'state service' which is unequal to the salary plan covering all other employees in the 'state service' in the same classes, which is in violation of the State Personnel Act and Rule 4-2 of the defendant Board, both of which require the Defendants to adopt and enforce the same schedule and rates of pay for each class of positions within the state service, and the Defendants will continue in such violation unless ordered by this Court to perform their duties as required by law.

"21. As a result of the failure of Defendants to adopt, administer and enforce a salary plan and pay schedule as required by statute the Plaintiffs as employees of county welfare departments in the 'state service' have not received equal pay for equal work as required by statute, and have received less compensation that they would have received had Defendants not violated the State Personnel Act.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

"That the administration and enforcement of the salary and pay plan adopted in 1971, effective November, 1971,

and currently in effect, is in violation of the State Personnel Act, in that such salary and pay plan provides for a separate schedule of rates of pay for employees of county welfare departments in the state service under said act unequal to the schedule of rates of pay for all other employees in state service.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED:

"That the Defendants through proper administrative action as prescribed by law are ordered to adopt, administer and enforce a salary and pay plan providing for uniform minimum and maximum rates of pay for each class within the state service, including employees of county welfare departments."

The State filed a timely motion to correct errors consisting of nine specifications, seven of which it has argued in its brief.

Finding no error, we affirm.

## I.

The State first argues specification 1 of its motion to correct errors (MTCE), which asserts that "[t]he Court's conclusion of law . . . that defendants are in violation of the State Personnel Act and Rule 4-2 . . . in operating separate salary and pay plans . . . is contrary to law."

The argument here is so novel that its logic escapes us. The State asserts that defendants "are administering both the job classification plan and the pay plan in accordance with the correct interpretation of the statutes and administrative regulations . . . and further, that their interpretation is the only one possible considering the constitutional principles which relate to and govern the statutes and administrative regulations." What follows is a discussion of "constitutional principles" which justify reasonable classifications for legislative purposes. Then follows a discussion of the statutes which provide for the State to pay only fifty percent of the salaries of county welfare department employees; statutes

that require county employees' salaries to be fixed locally, funds to be appropriated locally, and taxes to be levied locally, etc. All of which somehow leads the State to the conclusion that this renders the established system "reasonable and logical" with the result that defendants "have treated and continue to treat all employees within the counties and State classifications of service in the same way."

At best, this argument *may* (but we do not suggest that it does) justify a statute authorizing a pay plan which fixes a lower minimum for county welfare employees of the same class, but it provides no basis for so interpreting Rule 4-2. And State makes no argument that Rule 4-2 does not conform to applicable statutes.

## II.

The second specification of the MTCE is that the conclusion of law in paragraph 21 of the judgment (that due to defendants' "failure . . . to adopt, administer and enforce a salary plan and pay schedule as required by statute . . . employees of county welfare departments . . . have not received equal pay for equal work and have received less compensation than they would have received had Defendants not violated the State Personnel Act") is contrary to law. The argument in support thereof is that "[t]he defendants cannot implement the . . . older statute [IC 1971, 4-15-2-1, et seq. "State Personnel Act"] and neglect the later statute [IC 1971, 17-1-24-18.1, which gives county councils authority to fix salaries of employees payable from county funds.]"[1]

---

1. On April 13, 1973, eighty-four days before this declaratory judgment was handed down, P.L. 162 of 1973, amending the county council statute (IC 1971, 17-1-24-18.1) was filed and became law without the governor's signature. However, it did not become effective until July 26, 1973, one month after the judgment was handed down. Among P.L. 162's amendments was the addition of the following paragraph:

"The county council shall establish the compensation of the director of county welfare and other officers and employees of the county department of public welfare within the salary ranges of the pay plan adopted by the Indiana personnel board and approved by the state

Appellees correctly note that IC 1971, 17-1-24-18.2, expressly conditions the council's authority by providing that "a minimum salary shall be any minimum salary amount fixed by law, or the minimum salary specified in a minimum/maximum salary bracket fixed by law and permitted or required to be paid to officers or employees included within the purview of this chapter." (Added by P.L. 231, of 1971, effective April 16, 1971, eight months before the action was commenced.)

## III.

The State's third specification of error is that "[t]he Court's finding of facts in paragraph 21 of its Declaratory Judgment, that employees of county welfare departments in the 'state service' perform equal work is erroneous and not supported by any evidence."

The specific "finding" in No. 21 (as distinguished from its conclusions of law) is that "[a]s a result . . . [of the dual pay plan adopted by the State] the Plaintiffs as employees of county welfare departments . . . have not received equal pay for equal work. . . ." The State's argument interprets "equal work" as a finding that all State and county department employees in the same class have the same work load. The State then counters such interpretation with the assertion that "[i]t cannot be disputed that the work load of state employees within a certain class in Indianapolis is far more substantial than the work required of a state employee similarly situated in some sparsely populated county." We are then admonished, by quotation from *Tapp* v. *State* (1971), 256 Ind. 422, 427, 269 N.E.2d 367, that we "should not be ignorant as judges of what we know as men."

budget committee pursuant to IC 1971, 12-1-3 [12-1-3-1—12-1-3-11 which concerns county departments of public welfare] and IC 1971, 4-15-2 [4-15-2-1—4-15-2-46, the state personnel act.]"
Neither party has mentioned this amendment. However, it appears merely to make clear that the general condition on the council's authority expressed in IC 1971, 17-1-24-18.2 is specifically applicable to county welfare department employees.

Unfortunately our knowledge as men is not as extensive as the admonition implies, thus we remain ignorant as judges of the comparative weight of the work loads in county welfare departments and the State welfare department. Nor do we agree that the trial court's phrase, "equal pay for equal work", was a finding that work loads were equal. Instead, it is obvious that the trial court was merely saying that the State's pay plan had failed to achieve Rule 4-2's stated objective of guaranteeing "equal pay for comparable work". We fail to see any harm to the State in saying "equal work" instead of "comparable work".

## IV.

Specifications four and five of the State's MTCE are:

"4. The Court failed to consider the numerous Public Laws affected by its Declaratory Judgment.

"5. The Court failed to consider that conflicts to the statutory construction of numerous Public Laws are created by its Declaratory Judgment."

Hereunder, the State attemps to show that the establishment of the same minimum salaries for county welfare workers as for State workers would violate Ind. Ann. Stat. § 17-1-24-18.1 (Burns Code Ed., 1974), which authorized county councils to fix the salaries of county employees. But as appellees point out § 17-1-24-18.2 provides:

"For the purposes of this chapter a minimum salary shall be any minimum salary fixed by law, or the minimum salary specified in a minimum/maximum salary bracket fixed by law and permitted or required to be paid to officers and employees included within the purview of this chapter. . . ."

and § 17-1-14-18.3, provides:

". . . . In the fixing of salaries, the council shall observe all minimums provided by law or as provided by all applicable rules and regulations. . . ."

Those statutes clearly subordinate the county council's salary fixing authority to salary minimums established pursuant to statutorily authorized and applicable rules and regulations. Consequently there is no merit to the State's contention.

## V.

The State's sixth assignment of error reads: "The Court failed to consider the Constitutional issue of the illegal assignment of the power to tax to an administrative agency and the consequences of the use of such power by the agency."

The State's argument is that the declaratory judgment forces the appellant-state-administrative agencies to raise minimum county merit employee salaries which, in turn, forces county councils to raise taxes, thus obliging appellants to exercise a taxing power they do not possess.

One of the most obvious fallacies of this argument is that if it were valid, appellants would have no authority to establish any minimum salary for county merit employees, yet this is a power appellants have exercised for many years and do not now disclaim. Furthermore, the statutes which delegate local taxing, appropriating, and other powers to county councils [§§ 17-1-24-1 through 17-1-24-50] indicate throughout, and especially in § 17-1-24-18.2, that these powers are subject to the superior power of the general assembly to provide directly and indirectly through administrative agencies it establishes, minimum standards of local funding which the council must implement by exercise of its taxing and appropriating power. In *State* v. *Meeker* (1914), 182 Ind. 240, 247, 105 N.E. 906, the question was the validity of a statute providing a means for funding vocational education in counties. In upholding the statute the court said:

> "We cannot agree with appellees' contention that the legislature is without power to prescribe that twenty residents of a county may secure the appointment of a county agent

under § 12 and thereby increase the county tax. It must be borne in mind that the county is not an independent municipality with vested rights of local self-government but exists only as a unit and agent of the State. Its officers perform local duties for the sovereign body, and the legislature may control such officers in the levy and collection of the county tax so long as such control is exercised in the same manner wherever the conditions are the same."

## VI.

The last assignment of error not waived is: "The Court failed to consider the separation of powers issue by the illegal assignment of legislative prerogatives and powers to an administrative agency and the consequences of the use of such prerogatives and powers by the agency."

The argument the State makes in support of this contention of error is based upon a premise we have previously rejected, i.e., that the declaratory judgment forces the appellants to exercise the power of taxation. For reasons stated in section V, we find no merit in this argument.

No error being found, the judgment is

Affirmed.

Buchanan, P.J., and Sullivan, J., concur.

NOTE.—Reported at 342 N.E.2d 903.