**STATE of Indiana et al., Appellants**
**(Defendants below)**

v.

**Wanda H. KING et al., Appellees**
**(Plaintiffs below).**

No. 2–178A26.

Court of Appeals of Indiana,
Fourth District.

Dec. 30, 1980.

Theodore L. Sendak, Atty. Gen., Alan L. Crapo, Asst. Atty. Gen., Indianapolis, for appellants.

Frank E. Gilkison, Muncie, Charles Johnson, Indianapolis, for appellees.

MILLER, Judge.

The defendant–appellants (State)[1] appeal a judgment in favor of the plaintiff–appellees (King)[2] which decreed that Indiana's salary and pay plans (salary plans) from 1956 to 1976 for employees in the "state service" violated the State Personnel Act[3] by creating, even where like work was performed, pay rate schedules (salary schedules) for county welfare department employees in the "state service" (county employees) separate from and unequal to the salary schedules for other comparable state employees in the "state service" (state employees). Furthermore, for the years 1960 to 1976 (the period of 1956 to 1960 was held to be outside the Statute of Limitations) the trial court decreed the State to be liable to the class members for the difference in salary actually received and the salary which would have been received if the State had adopted and administered salary plans according to law.[4]

For the reasons stated below, we affirm the trial court's decision.

## FACTS AND ISSUES RAISED

King filed a class action suit against the State on September 15, 1975 alleging that every salary plan adopted by the State and applicable during the years of 1956 to 1976 created salary schedules for county employees which were separate from and unequal to the salary schedules for state employees thereby violating the State Personnel Act and Indiana Personnel Board Rule 4–2.[5] King claimed this alleged discrimination caused county employees to receive less pay than state employees for comparable work and denied county employees adequate merit increases.

---

1. The defendant–appellants include the State of Indiana, the Indiana Personnel Board, its members, Allen J. Fromuth as the Director of the Personnel Division of the Indiana Department of Administration, and Raymond Sanders as the Commissioner of the Indiana Department of Administration.

2. The plaintiff–appellees representing the class of merit employees of county welfare departments in Indiana except Lake County include: Wanda H. King, Wabash County; Meredith Bridgewater, Scott County; Margaret Snavely, Newton County; Barbara McClatchey, Newton County; Doris Qualkenbush, Fayette County; Donna Breeden, Orange County; Peggy W. McCoy, Fountain County; Marjorie Hie, Jefferson County; Carol A. Blough, St. Joseph County; Wilma Jean Cephus, St. Joseph County; Herbert M. Tolson, Elkhart County; Raymond W. Conner, Decatur County; Joanna Bolin, Gibson County; Eleanor Purcell, Davies County; Mildred Day, Jennings County; Mary Ann Rogers, Stuben County; Martin Wright, Crawford County; Mildred Paton, Vigo County; Carol Sue Johnson, Clay County; Madonna Hosler, Huntington County; Walter Timm, Allen County; Carla Bever, White County; and Susan Crouch, Bartholomew County.

3. Ind.Code 4–15–2–1 *et seq.* (1971).

4. Additionally, the trial court adjudged that:
   1. The class of person entitled to recovery was "[a]ll persons who were merit employees of Indiana County Welfare Departments, except Lake County, for any period of time between September 16, 1960 and January 1, 1977.
   2. A subsequent hearing would be held "to determine the nature, extent and manner of giving notice to members of the class...."

5. Rule 4–2(A), as codified at 30 Ind.Admin. Code 1–4–2(A), provides that:
   "All regulations affecting administration of the pay plan shall be designed, in accordance with the intents and purposes of Section 1 [IC 4–15–2–1] of the State Personnel Act, as amended, to guarantee equal opportunities and equal incentives for entrance to the service, *equal pay for comparable work* in the several agencies of the State service, and opportunity for accomplishment according to fair standards of accomplishment." (Emphasis added.)

For relief King sought: 1) a declaratory judgment that the various salary plans in effect since January 1, 1957 violated the State Personnel Act; 2) a court order requiring the State to adopt, administer, and enforce a uniform salary plan for all employees in the state service including county employees; 3) damages for lost wages resulting from the unequal salary schedules and the denial of merit increases to county employees; and 4) all other proper relief in the premises including attorneys' fees.

After the trial court certified King's complaint as a class action and the State denied the complaint's allegations, a trial on the merits was held on September 7, 1977. King introduced every state salary plan adopted and administered from 1960 to 1976. In addition to the documents presented, testimony was heard from only one witness, Robert C. Roeder, the Personnel Director for the State of Indiana, who was called as a witness by both parties. After considering the salary plans and Roeder's testimony, the trial court held for the class represented by King against the State.[6]

On appeal the State raises four issues:

(1) Is there sufficient evidence to support the court's decision that a separate salary plan for county employees was unequal to the salary plan covering state employees?

(2) Is there sufficient evidence to support the trial court's finding of fact number 9 that county employees were denied merit increases?

(3) Is the trial court's decision making *Indiana Personnel Bd. v. Galloway*, (1976) 168 Ind.App. 238, 342 N.E.2d 903, binding precedent in this cause contrary to law?

(4) Is the trial court's decision finding that statutes require equality of pay as between State and local welfare workers contrary to law?

**6.** According to the record before us, subsequent to the September 7, 1977 judgment the court held further hearings relating to the amount of the State's liability. The judgment appealed from was finalized pursuant to Ind.

## DECISION AND DISCUSSION

*Issues One and Two*

■ A trial court's judgment is clothed with a presumption that it is correct and the appellant (State) has the burden of establishing error. Thus, in reviewing a judgment, this Court must accord the trial court due regard for its opportunity to evaluate the evidence on the factual issues presented and uphold its findings unless they are clearly erroneous. *Indiana Dept. of Revenue v. Waterfiled [sic] Mtg. Co., Inc.* (1980), Ind.App., 400 N.E.2d 212; Ind.Rules of Procedure, Trial Rule 52(A). We cannot weigh the evidence or evaluate the witnesses' credibility but must restrict our review to an examination of the evidence most favorable to the trial court's decision and any reasonable inferences to be drawn therefrom. The decision will be affirmed if such is supported by evidence of probative value. *Ray v. Goldsmith*, (1980) Ind.App., 400 N.E.2d 176.

With regard to issue one, the State attacks the sufficiency of the evidence supporting the trial court's judgment that:

"[T]he adoption, administration and enforcement by the defendants [State] of the salary and pay plan adopted October 19, 1956, effective January 1, 1957, and each subsequently adopted and administered salary pay plan, until January 1, 1977, was and is in violation of the State Personnel Act in that such salary and pay plan provides for a separate schedule of rates of pay for employees of county welfare departments in the 'state service' under said act unequal to the schedule of rates of pay for all other employees in the 'state service'."

In making its challenge, the State discusses only the salary plans, ignoring Roeder's testimony which explained the documentary evidence. When we examine all of the evidence favorable to the decision (including Roeder's explanation of these plans) the following is revealed:

Rules of Procedure, Trial Rule 54(B). Since the State's allegations of error are directed to the September 7, 1977 order, the court's subsequent action is not relevant to this appeal.

■ It is undisputed that county employees are employees within the "state service" and, therefore, their salaries are controlled by the Indiana Personnel Board pursuant to Ind.Code 4–15–2–5(b) (1971) in addition to the Board's rules. Nor is it disputed that from 1960 to 1976 the State adopted thirteen salary plans each of which had separate and different salary schedules for county and state employees. These schedules applied to all county employees throughout Indiana. During this entire period the State classified every job (county and state) by means of a pay range number, such number indicating a salary schedule establishing minimum and maximum salaries. Significantly, jobs with different titles but with the same pay range number required comparable work.

From 1970 to 1976 the State assigned *all* county employees pay range numbers which were the same as those by which State employees were classified. Despite assigning the same pay range numbers, thereby indicating comparable work, the State placed *all* county employees in salary schedules with lower minimum salaries than those minimum salaries stated in the schedule associated with State employees.[7]

Prior to 1970 the State assigned *all* county employees pay range numbers different from those by which State employees were classified. In this time period the State implicitly classified county employees into two broad groups. The State assigned the first group, composed of clerical staff (stenographers and typists), the same job titles as those of state employees which indicated, according to Roeder's testimony, that this group performed work comparable to such state employees. Nevertheless, the State placed these county employees in salary schedules which differed from those schedules for the comparable state employees setting a lower minimum salary than that received by their state counterparts. From 1960 to 1970 the second group of county employees, composed of administrative staff (county welfare directors and case workers) did not have the same job titles as any State employees. However, in a Stipulation of Facts filed by the parties the State acknowledged that from 1967 to 1970 this administrative group performed work comparable with certain state employees.

To recapitulate, the evidence was sufficient for the court to have found that all county clerical employees for the entire period in question performed equal work with unequal pay by reference to either their pay range number or job title. With respect to the county administrative employees from 1970 to 1976 their pay range number was identical to state employees providing evidence of comparable work but unequal pay. Additionally, the Stipulation of Facts afforded the same result for county administrative employees from 1967 to 1969. The State does not argue that the trial court's finding with respect to the above county employees and for the state time periods was not sustained by sufficient evidence.[8]

■ Remaining for our determination is the State's contention that the failure to assign county administrative employees either pay range numbers or job titles comparable to state employees from 1960 to 1966 demonstrated that in this time period the

7. For example, Roeder, utilizing the 1971 salary plan admitted as evidence, pointed out that a county welfare director C–4 with pay range number 3900 had a salary range from a minimum of $275 per month to a maximum of $720 per month. However, a state employee with pay range number 3900 started at a *minimum* salary of $720 per month.

8. In *Indiana Personnel Bd. v. Galloway, supra,* discussed *infra,* the State's policy in regard to the separate and unequal salary schedules for state and county employees in 1971 was challenged. The only evidentiary issue raised by the State Personnel Board on appeal in *Gallo-*

*way* was with respect to the trial court's finding that county employees "have not received equal pay for equal work." The State insisted that such a finding meant that all state and county employees in the same class had the same work load. This Court concluded that "it is obvious that the trial court was merely saying that the State's pay plan had failed to achieve Rule 4–2's stated objective of guaranteeing 'equal pay for comparable work'. We fail to see any harm to the State in saying 'equal work' instead of 'comparable work'." *Id.* at 245; 342 N.E.2d at 907.

county administrative employees did not perform work comparable to any state employees thereby justifying their unequal pay. Applying the standard of review enunciated above, we believe the trial court reasonably could have reached the finding appealed from, i. e., that comparable state jobs existed for county administrative employees from 1960 to 1966. The evidence before the trial court refuted the contrary inference that comparable state jobs were created for the first time in 1967. First, all comparable state jobs existing from 1967 to 1976, existed from 1960 to 1966. Second, there were no basic changes in the salaries of these state jobs, other than normal, regular increases throughout the 1960 to 1976 period. Based on Roeder's testimony that identical pay range numbers indicated comparable work, we conclude that the evidence was sufficient to support the trial court's conclusion with respect to the fact that from 1960 to 1976 all the county employees received unequal pay for equal work.

■ The State also challenges the sufficiency of the evidence supporting the trial court's finding of fact number 9 that county employees were denied merit increases. Based upon our resolution of the first issue, we agree with the trial court's finding of fact.

An examination of the record supplies the following pertinent facts: Five of the plaintiffs in this case (Wanda King, Barbara McClatchey, Margaret Snavely, Martin Wright and Susan Crouch) received merit increases in various years in line with the lesser county salary schedule instead of the higher state schedules. One example from this group will suffice to demonstrate that the evidence is sufficient to support the trial court's decision. Wanda King was employed as a case worker C–2 in 1970 at the county minimum salary of $475 per month while the comparable state minimum salary was $660 per month. She received regular three merit increases from 1971 to 1973

($600 in 1971, $615 in 1972 and $630 in 1973). However, she never reached the state minimum salary of $660. The State argues that since she did in fact receive merit increases on the lower county salary schedule she was not denied merit increases. This is a specious argument. While King did receive merit increases on the county salary schedule, she was effectively denied merit increases on the higher state salary schedule since she was classified according to the county pay plan with its lower salary schedule.

The State correctly argues that the granting of a merit increase to a particular individual is discretionary; nevertheless, it is evident that even for those county employees who received a merit increase on the county salary schedule, their merit increase did not equal that which they would have received had they been on the state salary schedule. Therefore, the evidence is sufficient to support the trial court's conclusion.

*Issue Three*

The State next challenges as contrary to law the trial court's conclusion of law that *Indiana Personnel Bd. v. Galloway* (1976), 168 Ind.App. 238, 342 N.E.2d 903, "is a binding precedent requiring a judgment for the plaintiffs and the class which they represent and against the defendants." In its brief the State exclusively argues that *Galloway* is not *res judicata* requiring a judgment for King. We believe the State's argument misperceives the trial court's conclusion of law.

In *Galloway* the plaintiff–appellees were merit employees of various county welfare departments; however, it was not a class action suit.[9] The defendant–appellants in *Galloway* were identical to those in this action. The trial court's judgment held the State's 1971 salary plan violated the State Personnel Act by providing a salary schedule for county employees unequal to the salary schedule for comparable state employees. On appeal, against various chal-

9. The plaintiffs common to both cases are Susan Crouch, Wanda King, Margaret Snavely and Martin Wright.

lenges to IC 4–15–2–1 *et seq.* and 30 IAC 1–4–2, this Court upheld the mandate of that statute and rule requiring dual salary schedules, providing county employees "equal pay for comparable work." *Id.* at 247, 342 N.E.2d at 908.[10]

██ We agree with the State that the doctrine of *res judicata* is not applicable to this case when we apply the guidelines set out in *State v. Speidel* (1979), Ind.App., 392 N.E.2d 1172. Under the facts of this case, we believe neither claim preclusion (estoppel by judgment)[11] nor issue preclusion (collateral estoppel)[12] are applicable. The evidence in *Galloway* centered upon the 1971 salary plan, while the evidence introduced in the case considered herein focused on all salary plans from 1960 through 1976. Consequently, there could be no claim preclusion. Nor is issue preclusion applicable here as there is no identity of parties[13] or mutuality of estoppel.[14] *State v. Speidel, supra* at 1175.

██ Even though *Galloway* was not *res judicata* for the case considered herein, the trial court was correct in considering the *Galloway* decision as binding precedent under the doctrine of *stare decisis*.[15] Once the trial court determined that the salary plans attacked by King provided salary schedules for county employees separate from and unequal to salary schedules for state employees, this doctrine prevented the trial court from ignoring the *Galloway* holding that such dual salary plans were unlawful. Therefore the trial court's conclusion of law number 9 is not contrary to law.

*Issue Four*

██ The State finally claims the trial court's decision is contrary to law in that no statute requires equality of pay between state and county employees. This issue and the State's accompanying argument are identical to those raised and rejected in *Indiana Personnel Bd. v. Galloway, supra* 168 Ind.App. at 243, 342 N.E.2d at 905–06. The State's argument at best "*may ...* justify a statute authorizing a pay plan which fixes a lower minimum for county welfare employees of the same class, but it

10. The State claimed that (1) constitutional principles justified reasonable differing classifications, (2) the county councils' statutory authority to fix minimum salaries was violated, and (3) the statute illegally assigned the power to tax to an administrative agency; all of which were rejected by this Court. *See also* fn. 8, *supra*.

11. Claim preclusion is applied to a prior adjudication resulting in a final judgment on the merits rendered by a court of competent jurisdiction which acts as a complete bar to a subsequent action on the same claim between the same parties or those in privity with them. One of the tests in determining whether claim preclusion is applicable is whether identical evidence will support the issues involved in both actions.

12. Issue preclusion is applied when a particular issue is adjudicated and then put in issue in a subsequent suit on a different cause of action between the same parties or those in privity with them.

13. The requirement of identity or privity of parties is not satisfied if the same person appears in one suit in his/her individual capacity and appears in the subsequent suit as a representative of the interest of other persons. 1B Moore's Federal Practice ¶ 0.411[3] at 1421 (1980). Since *Galloway* was not a class action,

the plaintiffs in *Galloway* could not have represented the interest of the plaintiffs in King.

14. Mutuality of estoppel exists if the one taking advantage of the first adjudication would have been subsequently bound had the prior judgment gone the other way. The essential element of mutuality of estoppel is missing in the case considered herein. The plaintiffs in King would not have been bound by the opposite decision in *Galloway* since only the 1971 salary plan was voided by *Galloway*. Therefore, there was no mutuality of estoppel.

15. This doctrine states that, when a court has once laid down a principle of law as applicable to a certain set of facts, it will adhere to that principle and apply it to all future cases where the facts are substantially the same. Black's Law Dictionary 1577 (4th Rev. Ed., 1968).

"Apart from and in addition to the effect of decisions of federal courts and foreign courts, discussed in other sections of this subchapter, our inferior courts are bound by the decisions of the Supreme Court, and by the decisions of the Appellate Court when not in conflict with declarations of the Supreme Court."

7 I.L.E. *Courts* § 63 (1958); *E. g., Dailey v. Pugh* (1921), 83 Ind.App. 431, 131 N.E. 836.

provides no basis for so interpreting Rule 4–2 [a]nd [the] State makes no argument that Rule 4–2 does not conform to applicable statutes." *Id.* at 243; 342 N.E.2d at 906. For the reasons set out by the Second District in *Galloway,* we again reject the State's contention that there is no statute requiring equal pay for state and county employees.

Based upon our above analysis the trial court's judgment is affirmed and we remand this case to the trial court for further proceedings.

YOUNG, P. J., and CHIPMAN, J., concur.