(27 Misc. Rep. 667.)

### PEOPLE ex rel. MEAD v. DALTON.

(Supreme Court, Special Term, New York County.   June, 1899.)

CITY OFFICER—RESTORATION TO OFFICE—MANDAMUS.

> A keeper of the aqueduct, whose compensation consisted of a salary of $1,000, with permission to occupy, rent free, a house belonging to the city, of the value of $50 per month, and an allowance of $2.50 per day for keep of team, which was required for proper performance of his duty, having been illegally removed from his position, is entitled to a peremptory writ, not only to be restored to the position and the salary of $1,000, but to the allowance of $2.50 per day, and the right to occupy a suitable house rent free; and he is entitled to be paid his salary and his allowance of $2.50 per day for the time of his illegal exclusion; but redress as to the rental value of the house for such time cannot be had in the mandamus proceedings.

Mandamus proceedings, on relation of Frederick G. Mead, against William Dalton, commissioner of water supply of the city of New York. Relator moves for a peremptory writ. Granted.

Stickney, Spencer & Ordway, for the motion.
John Whalen, Corp. Counsel, opposed.

SCOTT, J.   The relator, who was a keeper on the aqueduct, appointed after a competitive examination, was illegally removed by the defendant on December 31, 1898.   His compensation or emolument consisted of three items:   First, he was paid a salary of $1,000 per annum; secondly, he was permitted to occupy, free of rent, a house belonging to the city; and, thirdly, he was allowed $2.50 per diem for the keep of a horse and wagon, which he was required to use in the performance of his duty.   That he is entitled to be restored to his position and salary of $1,000 a year is not disputed; the only question raised being as to whether he is entitled to the use of the house and the cost of keeping the horse and wagon.

I cannot escape the conclusion that the right to occupy the house, and the allowance for the keep of the horse and wagon, were a sub-

stantial part of the relator's compensation. If the city had not furnished him with a house, he would have been obliged to provide a house or other residence for himself, and the rent would have had to come out of his $1,000 salary; thus reducing the amount available for other purposes. So, also, as to the horse and wagon. He swears that he owned and furnished them, and that they were required for the proper performance of his duties. These statements are not denied by the defendant, and must, therefore, be taken as admitted. If they be true, it follows that, in the absence of an allowance from the city, the relator would have been obliged to pay out of his $1,000 salary the cost of keeping the horse and wagon; thus further reducing the amount available for other purposes. As a keeper of the aqueduct, it is not unreasonable to suppose that he ought to live near the scene of his duties, and, to enable him to do this, the city has permitted him to occupy a house of the estimated rental value of $50 per month, a value which the defendant does not question. If the relator were to be restored to duty merely at his cash salary, he would still be obliged, in order to perform his duties properly, to rent a house near that portion of the aqueduct in which he is employed, and also to keep a horse and wagon. This would cost him, at the rate fixed by the city, $600 a year for house rent and $912.50 for keep of the horse and wagon, to meet which he would receive a salary of $1,000 in cash, leaving a deficiency of $512.50 per annum. It may be said that the allowance for rent and keep of the horse and wagon are excessive. The answer is that the city fixed their amount by furnishing a house worth $50 per month, and by fixing the rate of keep of horse and wagon at $2.50 per diem. But, even if these allowances were to be cut in two, the relator would have little left out of his $1,000 cash salary after he had paid house rent and horse keep.

The relator is entitled to be restored to just as good a position as he held when he was illegally removed. He will not be so restored unless he receive, not only his cash salary, but also his right to occupy the house, or the equivalent of such right, and the cost of keeping of his horse and wagon. The relator is entitled to a peremptory writ of mandamus restoring him to his position, with the salary and allowances heretofore paid him, including the right to hold and occupy a suitable house, rent free. He is also entitled to be paid, for the period since the illegal attempt to remove him, his salary at the rate of $1,000 per annum, and also the sum of $2.50 per diem for the keep of the horse and wagon. As to the rental value of the house, it cannot, I think, be provided for in this proceeding. The relator was entitled to occupancy, not to cash, and, while he is undoubtedly entitled in some form of proceedings to be indemnified for the loss of the use of the house during the period of his illegal removal, I do not think that this can be effected through a writ of mandamus. Motion for peremptory mandamus granted, with $25 costs.

Motion granted, with $25 costs.