INDIANA STATE PERSONNEL BOARD, INDIANA DEPARTMENT OF CORRECTIONS *v.* ROY D. MARTIN, WILLIAM F. PETERS, WILLIAM M. FROST, CHARLES S. HEILIGER, MICHAEL VIETTI.

[No. 2-674A128. Filed December 29, 1975. Rehearing denied February 25, 1976. Transfer denied September 14, 1976.]

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellants.

*Arthur J. Sullivan, David F. McNamar, Steers, Klee, Sullivan, McNamar, & Rogers,* of Indianapolis, for appellees.

## CASE SUMMARY

BUCHANAN, J.—Appellants-Respondents (Appellants) Indiana State Personnel Board and Indiana Department of Corrections (the Personnel Board and the Department) appeal from a trial court judgment requiring payment to Appellees-Petitioners Roy D. Martin, William F. Peters and William M. Frost for the reasonable value of housing denied them and further requiring payment for vacation days denied all the Appellees-Petitioners as employees of the Department during the period of their suspension, the Appellants claiming such payments are not emoluments of their offices as such employees.

We reverse in part and affirm in part.

## FACTS

On October 18, 1973, the trial court entered its judgment including Findings of Fact and Conclusions of Law which are as follows:

## FINDINGS OF FACT

1. That Petitioners herein were employees of the State of Indiana, Department of Corrections, working at the Indiana State Penal Farm until their suspension in 1969.

2. Said employees were suspended from their respective positions of employment with the Indiana State Farm because of their arrest for theft of meat from said institution and/or trafficking with an inmate.

3. That on October 9, 1969 the Circuit Court of Putnam County sustained Motions to Dismiss all of the criminal charges against each of the Petitioners following the trial of Michael Vietti which trial resulted in a hung jury.

4. That Petitioners were initially ordered to report back to work but subsequently they were notified that effective March 16, 1970 they would be dismissed from their employment.

5. That on March 19, 1970 the State Personnel Board accepted Petitioners' appeals and the appeals of the above employees were tried throughout 1970 and 1971. The Vietti case was heard by the Full Board and the remaining four other employees' cases were heard by the Hearing Examiner.

6. Following the administrative hearings and court proceedings herein which involved Petitioner Michael Vietti, all of the Petitioners were ordered reinstated to their former or original positions with full back pay and "emoluments of their offices" from the date of the Dismissal of the charges by the Putnam Circuit Court to the date of reinstatement.

7. The State Personnel Board modified the hearing examiner's original recommended finding by providing a set-off for any wages earned by said Petitioners during their respective period of suspension until the date when their respective charges were dismissed. Said Board did not however modify the recommended finding that said employees were entitled to the "emoluments of their offices" which were ordered to be accorded to each Petitioner herein.

8. Petitioners Roy Martin, William M. Frost, William F. Peters were furnished housing at the institution before their suspensions for the sum of $50.00 per month.

9. That following their suspension from employment at the Indiana State Farm, the aforementioned Petitioners

were required to move from the State furnished residences and had to rent private dwellings.

10. That on March 12, 1973 the State Personnel Board after requested to do so by the above Petitioners, decided that "housing is not an emolument inasmuch as the respective employees were charged for such housing."

11. The Petitioners were also denied credit for vacation days during the period of suspension and reinstatement by reason of the memorandum dated March 13, 1973.

## CONCLUSIONS OF LAW

That based upon the above stated facts, the following conclusions of law are made:

1. That law is with the Petitioners and against the Respondents.

2. That by reason of the fact that the State provided housing to these Petitioners, the same constituted "an emolument of their office".

3. By reason of the Board's order to allow emoluments of their positions which was not contested by either side herein, these employees are entitled to the fair market value of that housing denied them from the time of their eviction from State provided housing until such time as such housing was restored to that individual.

4. That furthermore credit for vacation days constitute an emolument of their office and that they are entitled to receive credit from the date of suspension until reinstatement.

5. That the decision of the Board denying housing and vacation days as an emolument of their office was contrary to law.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this action be reversed and remanded to the State Personnel Board to determine the reasonable value of housing for each of said employees entitled to the

same namely, Roy Martin, William M. Frost, William F. Peters and the value of vacation days denied the Petitioners herein in accordance with these findings.

· All of which is ORDERED, ADJUDGED AND DECREED this 18th day of October, 1973.

/S/ Rufus C. Kuykendall
Judge, Superior Court of
Marion County, Room No. 6

Additional pertinent facts gleaned from the record are:

On March 1, 1969 when they were suspended from their employment at the Indiana State Farm in Greencastle, Indiana, William M. Frost was a Maintenance Supervisor, Roy D. Martin was an Engineering Supervisor, William F. Peters a Powerhouse Engineer. They paid $50.00 a month, including utilities, for housing located on the State Farm Grounds which was substantially less than they were required to pay for comparable housing elsewhere. All the employees (Appellees) were merit employees in the "classified service" and were paid a monthly salary.

The Appellants appealed from overruling of their Motion to Correct Errors on March 7, 1974.

### ISSUE

The parties deem the issue to be:

Does the phrase "emoluments of their offices" include:

(A) the reasonable value of housing furnished employees Martin, Frost and Peters during the period of their suspension from employment; and

(B) vacation pay during the period of suspension for all the employees (Appellees).

*As to housing (A)* the Appellants' position is the State Personnel Act prohibits housing from being an emolument of employment in the form of compensation for services because to allow such an emolument would be contrary to the State Personnel Act.

*As to vacation days* (B) the Appellants concede vacation days might be considered an emolument of employment but the employees have already received any vacation days to which they were entitled; and that it is up to the Department as their employer to determine when their vacation should be taken and the determination was that it be during their suspension.

The employees argue as to both (A) and (B) that the term "emolument" is more comprehensive than salary and includes housing as part and parcel of their employment . . . and cite certain non-Indiana cases in support thereof. They further argue that vacation pay is a benefit the same as sick leave or pay for holidays, and point to IC 1971 5-10-6-1[1] which is a statute allowing the Governor to grant a vacation with pay to certain State employees (those paid on hourly basis).

## DECISION

ISSUE A:

CONCLUSION—The trial court committed reversible error[2] by deciding as a matter of law the reinstated employees (Martin, Frost and Peters) were entitled to the reasonable value of housing furnished them as "an emolument of their office."

Probably as a result of the use of the term emolument by the Personnel Board the parties have chosen to cast the issue in terms of "emoluments of their offices". This is a

---

1. "Retroactive to January 1, 1969, employees of the State of Indiana who are compensated for their services on an hourly basis may be granted a vacation *with pay* and paid holidays by executive order of the governor, and employees of the political subdivisions of the state may be granted a vacation with pay, sick leave, paid holidays, and other similar *benefits* by ordinance of the common council of the city or by the controlling board of a municipally owned utility, board of county commissioners of a county, town board of a town, or advisory board of a township, or the board of directors, or regents of a cemetery, or by the board of trustees of any library district." (Emphasis Added.)

2. The Appellees had sought review by the trial court of the Board's decision denying housing and credit for vacation days.

misnomer. Emoluments of office generally refers to public officers, either elective or appointive, who hold positions of public trust and responsibility.[3] See 67 C.J.S., OFFICERS, §§ 1-3, 89, pp. 96-105, 326. None of the employees who are parties to this appeal are officers in this sense, and no contention is made that their status is other than classified employees of the State of Indiana subject to the terms of the State Personnel Act of IC 1971, 4-15-2-1, et seq. (Burns Code Ed.). "Emoluments" are not part of the language used in either the State Personnel Act or the Regulations issued thereunder . . . and its usage in connection with State employees in the classified service appears to have sprung full blown into being much as gray-eyed Athena sprang full blown from the head of Zeus.

The more accurate term applicable to reinstated State employees is "lost wages and *benefits.*"

IC 1971 4-15-2-33 (Burns Code Ed.)[4] allows a suspended State employee to receive lost wages and *benefits* for the period of suspension if the outcome of charges brought against such suspended employee are favorable to the employee. It provides:

4-15-2-33 [60-1334]. Disciplinary suspension.—An appointing authority or his designee may, for disciplinary purposes, suspend without pay a regular employee in his division of the service for such length of time as he considers appropriate, not exceeding thirty [30] days in any twelve [12] month period. With the approval of the director a regular employee may be suspended for a longer period pending the investigation or trial of any charges against him. If the outcome of the charges or trial of any charges is favorable to the employee, *the appointing authority shall*

---

3. "Emoluments" is used in Article 4, § 30 of the Constitution of Indiana, which refers to emoluments of the offices held by a State Senator or a State Representative.

4. As far as can be ascertained from the record this statute is applicable to these proceedings. In 1971 it was amended to add the last sentence.

*reimburse the employee any lost wages and benefits for the suspension period* less any wages the employee might have earned during the suspension period from other employment. [Acts 1941, ch. 139, § 34, p. 387; 1949, ch. 235, § 11, p. 777; 1971, P.L. 35, § 13, p. 181]. (Emphasis supplied.) (Hereinafter referred to as the Disciplinary Statute).

The precise question, then, is to determine if "benefits" include housing supplied these employees on the grounds of the State Penal Farm for which they paid rental of $50 per month (including utilities).

The State Personnel Act is a comprehensive and elaborate enactment affecting employees in State service with the stated purpose of adopting the merit principle and scientific methods "relating to the appointment, compensation, promotion, transfer, layoff, removal and discipline of employees and to other incidents of State employment." IC 1971 4-15-2-1 (Burns Code Ed.)

Enacted in 1941, and since amended on several occasions, the Act is administered by a State Personnel Board which among other things is authorized and directed to adopt a pay plan to be administered by a Director. It divides State service into classified and unclassified service. Reference is frequently made to the establishment of a pay plan for employees and to vacations, overtime, holidays, special leave, sick leave. There is no reference whatsoever in the Act itself, or the regulations, to housing as a method of compensation or as a benefit.

One regulation, (60-1312)-7 contemplates that the total remuneration paid employees is salary, not including reimbursements for official travel. It states in part:

(60-1312)-7. *Total remuneration for employees.—1.* Any salary paid to an employee shall represent the total remuneration for the employee, not including reimbursements for official travel.

So it would appear from an examination of the State Personnel Act and its regulations that no such benefit as a favorable housing rental is contemplated by its specific terms, nor can we imply any such benefit therefrom.

Furthermore, there is no indication in the Findings of Fact, or elsewhere in the record, that these employees were induced to accept employment with the understanding that favorable housing rental would be a part of their contract of employment or that any such arrangement was in fact a part of their employment contract. Thus, this case is distinguishable from *Wyatt* v. *School District No. 104*, (1966), 148 Mont. 83, 417 P.2d 221, and *People, ex rel. Mead* v. *Dalton* (1899), 27 Misc. 667, 59 N.Y.S. 666, cited by the employees in their brief. While the favorable treatment afforded these particular State employees appears to be a bargain rental, and a benefit in that sense, there is no authority in the State Personnel Act, or Regulations, or any Indiana case, that any such benefit is contemplated.

By so concluding we do not necessarily exclude the possibility of a specific arrangement allowing favorable housing rental as a term of employment by the State Personnel Board on behalf of the State pursuant to the State Personnel Act (particularly 4-15-2-5), but it is not necessary for us to decide any such issue at this time.

ISSUE B:

CONCLUSION—The trial court properly determined that the employees (all the appellees) were entitled to a credit for unused vacation pay during the period of their suspension.

Payment for unused vacation time is contemplated by the regulations adopted under § 4-15-2-5 and § 4-15-2-29 of the State Personnel Act.

Regulation (60-1330)-4 flatly states that:

*"Vacation leave with pay shall be earned by all full-time employees in the classified service* at the rate of one [1] working day for each full month of employment." (Emphasis supplied.)

And Regulation (60-1330)-5 is specific in allowing payment for *unused vacation time* upon separation from the service in good standing.[5]

In 1943, 1949, and again in 1968, Opinions of the Attorney General have taken the position that the rules relating to vacation leave with pay is a part of the "contract of employment and the rights of the employee vested thereunder." OP. ATT'Y GEN. 184, 186 (1943). This right to accrued vacation with pay as a vested right of a merit employee of the State of Indiana, was followed in 32 OP. ATT'Y GEN. 127 (1949) and 8 OP. ATT'Y GEN. 53 (1968).

Our research discloses no Indiana cases but we find the opinions of the Attorney General persuasive.

The State Personnel Board is authorized "To adopt, with or without modification, such pay plan as may be recommended by the director and as is in conformity with the provisions of this chapter . . .". IC 1971 4-15-2-5 (b) ; and the regulation adopted pursuant to that section, (60-1330)-4, uses mandatory language leaving little doubt that the legislative intent was to vest an absolute right in the employee to be paid for *unused vacation time*.

---

5. (60-1330)-5. Payment for unused vacation, earned overtime, and holidays on separation.—1. Upon separation from the service, in good standing, an employee shall be paid for *unused vacation* for a maximum of six [6] calendar weeks, plus earned overtime and holiday leave to the extent accumulated. The effective date of separation shall be the last day for which any such payment is due. (Emphasis supplied.)

\* \* \*

3. If the employee has anticipated vacation or holiday leave, and separated from the service before actually earning such leave, payment for leave used but unearned shall be deducted from the final payment of salary. [Personnel Bd., Rule 11, § 11-4(F), adopted Sept. 11, 1946, filed Sept. 28, 1946; as last amended by Rule 11, § 11-3(F), Oct. 28, 1971, filed April 19, 1972.]

(60-1330)-5 carries out the intent of (60-1330)-4 by making specific reference to *unused vacation time* upon separation from the service in good standing. We can see no distinction between the vesting of that right in those who remain in the service without being suspended or separated from the service and those who, like the employees involved in this appeal, have been reinstated after a period of suspension under the provisions of the Disciplinary Statute. Unused vacation time would thus be a "benefit" within the meaning of the Disciplinary Statute to which these employees are entitled just as though they had remained employees in good standing.

Having reinstated the employees because of the favorable outcome of the charges against them, the Personnel Board is in no position to deny the applicability of the Disciplinary Statute and the explicit terms of its own regulations . . . in particular (60-1330)-4.

The trial court's Findings of Fact and the Conclusions of Law are clearly erroneous (Rule TR. 52(A)) in that they directed the Board to award Martin, Frost and Peters the reasonable value of housing denied them during their suspension. They are correct in directing that all the employees (Appellees) are entitled to a credit for vacation days denied them during the period of their suspension.

The trial court's judgment is therefore reversed and affirmed accordingly.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 338 N.E.2d 743.