STATE EMPLOYEES' APPEALS COMMISSION, INDIANA STATE PERSONNEL BOARD, Appellants (Respondents Below),

v.

Philip E. BROWN, Doris Ayers, Rheta Caddell, Barbara Davis, Debra Gosewehr, Janet McGill, Shirley Sharp, Peggy Warren and Eileen Yeater, Appellees (Petitioners Below).

No. 2–281A56.

Court of Appeals of Indiana, Second District.

June 9, 1982.

Linley E. Pearson, Atty. Gen., Hubert J. Riedeman, Jr., Deputy Atty. Gen., Indianapolis, for appellants.

Robert Bracken, Frankfort, for appellees.

SULLIVAN, Judge.

Appellees are employed by the County Department of Public Welfare of Clinton County, Indiana, and are employees in the State Service as defined by I.C. 4–15–2–3(a)(1) (Burns Code Ed.Supp.1979). Appellants are the Indiana Personnel Board (Board) and the State Employees' Appeals Commission (Commission). Appellants are before us challenging the Clinton Circuit Court's judgment of September 19, 1980 and present the following issues:

I. Whether the trial court's judgment is contrary to law in that the court exceeded the scope and standards for judicial review;

II. Whether the trial court's judgment is contrary to law in that the State is not obligated to provide medical and dental benefits to county welfare employees; and

III. Whether the trial court's judgment is contrary to law in that the Indiana Department of Administration was not a party to this action, thus precluding enforcement of this judgment against the State.

We affirm.

The State of Indiana provides a broad package of fringe benefits, including health insurance, for all its full-time employees. On May 17, 1979, Appellee Philip E. Brown,

Director of the Clinton County Welfare Department, attended a meeting of the Board. At this meeting Robert Roeder, Director of the Indiana State Personnel Division announced that all State employees would receive a 7% compensation and fringe benefit salary increase. Three and one-half percent (3½%) of this was to be in the form of a salary increase and three and one-half percent (3½%) was to be in the form of fringe benefits. Mr. Roeder also informed the Board that the Department of Administration would soon implement a dental health care program.

John Walsh, a representative of the Indiana Public Welfare Association, explained to the Board that the State's fringe benefit package, other than participation in the retirement plan, had never been extended to county welfare employees. Mr. Roeder responded that this decision did not rest with the Board, but that any such extension should be addressed through legislative action.

The Board then made its resolution on the salary issue, approving a revised salary schedule for all State employees and county welfare employees under the Merit system.

Appellees began the employee complaint procedure, pursuant to I.C. 4–15–2–35 (Burns Code Ed. 1974), on June 14, 1979. Nine grievances were filed. One grievance stated: "I appeal the lack of fringe benefits, namely medical and dental, given by the State Personnel Board in their May 17, 1979 board meeting." The other eight complaints alleged: "Lack of fringe benefits given by the State Personnel Board in their May 17, 1979 board meeting to be implemented by June 11, 1979." Each appellee's complaint was denied by the intermediate supervisor noting, "I would have no jurisdiction to comply with request" and by the appointing authority for "lack of jurisdiction to comply with request."

Appellees pursued their complaint and appealed to the Indiana State Personnel Division. Mr. Roeder in his capacity as State Personnel Director wrote a letter of denial, dated July 10, 1979 to each employee. He stated: "The minimum require-ments for the complaint procedure are established by the Official Rules of the State Personnel Board, Section 13–1(A) which states:

"Any regular employee may file a complaint if his status of employment is involuntarily changed or if he deems conditions of employment to be unsatisfactory. However, the complaint procedure shall be initiated as soon as possible after the occurrence of the act or condition complained of and in no event shall be initiated more than ten (10) calendar days after the employee is notified of a change in his status of employment or after an unsatisfactory condition of employment is created. Failure to initiate the complaint procedure within such time period shall render the complaint procedure unavailable to the employee." 30 IAC § 1–13–1(A) (1979).

His letter continued:

"As there has been no change in your status or condition of employment within the 10 days preceding the initiation of your complaint, I have no authority to intervene. The State Personnel Act makes no provision for insurance benefits. Neither the State Personnel Board nor I in my capacity as Director of the State Personnel Division have the prerogative to modify the provisions of the group insurance plan or extend its application to employees of County Departments of Public Welfare . . . ."

The next step in the appeal procedure was before the Commission. On August 22, 1979, George A. Brumbach, Chairman of the Commission, wrote the following in his letter of denial.

"The State Employees' Appeals Commission derives its authority from I.C. 4–15–1.5–6 to hear appeals from state employees and fairly and impartially render decisions as to the validity of said appeals or lack thereof. The Commission was established to hear complaints concerning violations of the Indiana State Personnel Act 4–15–2 and State Personnel Board Rules. Fringe benefits, medical, and dental insurance coverage are not addressed

in either the State Personnel Act or the State Personnel Board Rules. The State Employees' Appeals Commission, therefore, lacks the necessary jurisdiction to grant the remedy you are seeking, specifically to mandate the inclusion of county welfare workers in the insurance program for other merit employees."

The Commission letter concluded by incorporating a unanimously passed resolution:

"RESOLVED, That it is the considered decision of the State Employees' Appeals Commission that the request for a hearing on the appeal of [name of employee] is hereby denied."

On September 5, 1979, Appellees filed their first Petition for Judicial Review requesting the trial court to remand the Appellees' complaints to the Commission for a hearing. The Clinton Circuit Court found that the refusal of the Commission to hear Petitioner's complaint was arbitrary, capricious, an abuse of discretion, not in accordance with law, and was without observance of procedure required by law, and remanded the grievance to the Commission on September 27, 1979.

The Commission held a hearing on December 3, 1979, and the evidence established that as of May 17, 1979, the medical insurance program was an already existing benefit while the dental insurance program was a future benefit announced at the May 17, 1979 meeting. On January 21, 1980, the Commission entered the following "Conclusions of Law":

"1. That at the May 17, 1979 meeting of the State Personnel Board, no resolutions were passed dealing with medical or dental benefits.

2. That at the May 17, 1979 meeting of the State Personnel Board, no fringe benefits, either medical or dental, were 'given' by the State Personnel Board. Based on the foregoing Findings of Fact, the State Employees' Appeals Commission, upon Motion duly made and seconded, unanimously adopted the following Resolution: RESOLVED, That it is the considered opinion of the State Employees' Appeals Commission that the allega-

tions set forth in Petitioner's Complaint were not substantiated by the evidence presented and that the appeal of Philip Brown, et al. versus the Indiana State Personnel Board is hereby denied."

On February 1, 1980, Appellees filed their second Petition for Judicial Review, naming as Respondents only the State Employees' Appeals Commission and the Indiana Personnel Board.

The Clinton Circuit Court rendered its second judgment on September 19, 1980. In pertinent part, the trial court concluded that failure to include the Petitioners in medical and dental insurance programs offered to other State employees is discriminatory and constitutes an unsatisfactory condition of employment within the purview of I.C. 4-15-2-35 (Burns Code Ed. 1974). The court also found that the issue of lack of medical and dental insurance benefits had been fully tried before the Commission. The Court further found that the Commission's refusal to decide the issue because the Petitioner's original complaints stated that said benefits were "given" at the State Personnel Board meeting of May 17, 1979, when in fact medical insurance was a pre-existing program and dental insurance was announced at that meeting was contrary to law. Accordingly the Commission's decision was reversed and remanded for further proceedings in accordance with the trial court's decision.

I.

The first issue for our review is whether the trial court exceeded the scope of and standards for judicial review. To determine whether this is accurate, the issue and/or issues litigated before the administrative tribunal must be ascertained.

The Chairman of the Commission opened the proceedings with the following statement: "This hearing is being held to hear the grievance of Philip Brown et al. . . . it's relative to the denial of fringe benefits . . . ." Mr. Roellgen, representing the Board, phrased the issue thusly in his opening statement: "At issue here is not the

question of whether county welfare employees should receive fringe benefits. That issue is not one to be decided in an administrative complaint procedure, rather, due to the unique placement of the county welfare department employees within the state system, the real issue is whether the respondent, Indiana State Personnel Board has denied the petitioners the benefits. [Record at 186] . . . In these facts respondent State Personnel Board would hope the Commission would concur that only one conclusion can be drawn, that the contracting of fringe benefits and the administration thereof is not within the powers of the State Personnel Board, that the Board has not assumed such power and that the Department of Administration, a body outside the jurisdiction of the State Employees' Appeals Commission, administers such plans pursuant to statutory authority."

Philip Brown, the welfare director in the county of Clinton, testified before the Commission as follows: "The Personnel Board chaired by Mrs. Mildred Richey discussed compensations and fringe benefits as a seven percent package, and this was discussed at length and there was to be three and one half percent salary and three and one half percent fringe benefits and only then did we learn that the fringe meant a new dental package which was to be total State pay." Subsequent testimony by Mr. Brown concerned the Board minutes of May 17, 1979.

"Q. Glancing at pages seven and eight are there references in there to the dental care program and the fringe benefits that were being discussed?

A. Yes there is. In fact, if we go to the fourth paragraph the dental program is specifically mentioned as part of the fringe benefit package. And we also go into the fact that it was Mr. Roeder's understanding that merit increases are to be included as well as fringe benefits which was discussed at length in this meeting, and again Mr. Roeder spoke about the dental program . . . as we go down through here.

Q. Does somebody object to the fact that the welfare department employees in the counties were not going to get the fringe benefits.

A. Yes. Mr. John Walsh, counsel for the Indiana Public Welfare Association, objected directly to Mrs. Richey and Mrs. Richey stated to Mr. Roeder, State Personnel Director, that this problem should be resolved and requested that Mr. Roeder look into this and report back to the board."

Regarding the issue whether Petitioners are state or county employees, Mr. Brown gave the following testimony:

"Q. You are a full time state employee?

A. Yes sir . . .

Q. Do you consider yourself a State Employee?

A. Employee in the State Merit Service as a State employee, whatever that is."

Robert Hoss testified in his capacity as supervisor of the compensation and fringe benefit section for the State Personnel Division, Department of Administration. With regard to the May 17, 1979 Board meeting the following colloquy took place:

"Q. Did the State Personnel Board grant or deny fringe benefits in any action taken that day?

A. The State Personnel Board, in its meetings acts by resolution and they passed a resolution with regard to the revision of the State salary schedule, to increase all steps and all classes in the salary plan by three and one half percent."

On cross examination, the following testimony by Mr. Hoss was given:

"Q. Now you were at the State Personnel Board meeting on May 17th you said, and you said nothing appeared in the resolution that they passed. Was there any discussion at that meeting?

A. Yes, sir. There was discussion about change in the fringe benefit package.

Q. Was the dental and medical insurance program discussed?

A. The dental program and the change in the amount of life insurance. That's the way I recall it."

Throughout the administrative hearing, the Commission was trying to ascertain who ultimately had responsibility for administration of the fringe benefit program. The Commission questioned Mr. Hoss about whether this responsibility rested with the State Personnel Board, the State Personnel Department or the Department of Administration. A Commission member asked Mr. Hoss: "Based on your years of experience, and so forth, whose responsibility would it be to provide the employees of Clinton County Welfare Department fringe benefits?" The Commission's last question to Mr. Hoss concerned the May 17th meeting.

"Q. Did you have the impression that the Board had, though there was not a resolution made, that the Board had promised the welfare workers (inaudible)

A. There was discussion as Mr. Brown indicated, that the Board was cogniscent (sic) of the fact that the county welfare department employees were not receiving fringe benefits but as Mr. Roeder pointed out in his remarks as well, they had no authority to act for the county officials."

The closing statement by Mr. Bracken, attorney for the Appellees, sums up the evidence presented to the Commission. He stated employees' grievance to be that Petitioners are full time state employees who are denied medical fringe benefits in contravention of I.C. 4–15–5–4 (Burns Code Ed. 1974) which says that the programs shall be nondiscriminatory as between employees. Roellgen, in his closing statement, framed the issue as a determination of who had ultimate responsibility to work the problem out in a satisfactory manner.

There were attempts on the Commission's part to limit the scope of the testimony to the issue contained in the Petitioner's initial complaint. In the opening statement the Commission Chairman cited a Board rule, 30 IAC § 1–13–2B(2) (1979), providing that once an employee has reduced the complaint to writing at the initial stage of the complaint procedure, the text of such complaint shall remain unaltered as the complaint proceeds further in the complaint process. The chairman gave this explanation for referring to the rule:

"The brief made no statement whatsoever of what they expect or what. This is the reason I read into the record the rule about there would be no changing of grievances after it reaches this step."

After hearing Mr. Brown's testimony the chairman interjected the following question:

"Q. Let me get one here before I forget it. Mr. Brown, in your grievance you state, 'I appeal the lack of fringe benefits namely medical and dental given by the State Personnel Board at our May 17th, 1979 board meeting.' Not having a chance to pursue these carefully, is there anything in the minutes that says, they weren't given? . . .

A. I did not see that in their resolution . . . no, sir.

Q. But your grievance says 'given by.'

A. Yes, because I was personally there and that was my assumption, that they definitely did rule on that and again I will go back to my original statement of three and one half percent and three and one half percent. ·Now, if I was misled, etc. . . . I was . . . but on the other hand that was the assumption that I got as an eyewitness to the . . . board."

Mr. Brown's attorney responded:

"I believe what he is saying Mr. Chairman is that this material was omitted from the minutes, whether deliberately or inadvertently, we don't know that. It was omitted."

The issue which was to be litigated was the grievance itself—lack of fringe benefits.

It is well settled that administrative relief is not denied because of defects in the initial pleadings where the issue is fully presented and tried before the agency. In 1 Davis, Administrative Law Treatise, 523, 525, Section 8.04 (1st ed. 1958)

"The most important characteristic of pleadings in the administrative process is their unimportance. . . . 'It is now generally accepted that there may be no subsequent challenge of issues actually litigated, if there has been actual notice and adequate opportunity to cure surprise.'

... 'The general rule is that a party cannot subsequently challenge an issue which is actually litigated if he has had actual notice and opportunity to defend.'
... And the question on review is not the adequacy of the original notice or pleading but is the fairness of the whole procedure."

*Yunker v. Porter County Sheriff's Merit Board* (3d Dist. 1978) Ind.App., 382 N.E.2d 977, involved a county police officer who sought judicial review of an administrative decision of the county sheriff's merit board recommending his dismissal for various alleged acts of official misconduct. He contended that he was denied his right to a fair hearing because he was not properly notified of the charges to be considered at the hearing, and he was therefore unable to adequately defend. The Court in *Yunker* stated at 981:

"The fundamental purpose of pleadings in the administrative process is to inform each party of the other's position so that each can properly prepare. However, an issue which is actually litigated cannot subsequently be challenged where the party has actual notice and an opportunity to defend. The failure to object to the introduction of issues at the hearing that were not covered by the complaint has the same effect as amending the complaint. Davis Admin. Law § 8.02, at 196 (3d Ed. 1972)."

*See Brinson v. Sheriff's Merit Bd. of Jefferson County* (1st Dist. 1979) Ind.App., 395 N.E.2d 267, 273. *City of Anderson v. State ex rel. Page* (4th Dist. 1979) Ind.App., 397 N.E.2d 615, 622.

■ Appellants would have us render Appellee's grievance inadequate for the reason that these employees are restricted to the text of their initial complaint because of 30 IAC § 1–13–2(B)(2) (1979) which states:

"(2) Once the employee has reduced his complaint to writing at this step of the complaint procedure, the text of such complaint shall remain unaltered as the complaint progresses further in the complaint procedure."

This rule governs the Board and as a consequence of I.C. 4–15–1.5–7 (Burns Code Ed. 1974), which transferred all rights and requirements of the Board to the Commission, this procedural requirement is binding upon the Commission. I.C. 4–22–2–11 (Burns Code Ed.Supp.1979) provides that any regulation which is published shall be judicially noticed by all courts. However, these employees are also governed by the State Personnel Act (Act) I.C. 4–15–2–1—4–15–2–46 (Burns Code Ed.1974) because they are in the "state service" as defined in I.C. 4–15–2–3 (Burns Code Ed.Supp.1979). Because the provisions of the Act extend to employees here involved, the petitioners utilized the employee complaint procedure, I.C. 4–15–2–35 (Burns Code Ed.1974). It provides:

"Any regular employee may file a complaint if his status of employment is involuntarily changed or if he deems conditions of employment to be unsatisfactory. The following complaint procedure shall be followed:

Step I: The complaint shall be discussed by the employee and his immediate supervisor and, if a mutually satisfactory settlement has not been made within two [2] consecutive working days, such complaint shall be referred to Step II.

Step II: The complaint shall be reduced to writing and presented to the intermediate supervisor. If a mutually satisfactory settlement has not been reached within four [4] consecutive working days, such complaint shall then be referred to the appointing authority.

Step III: The appointing authority or his designated representative shall hold such hearings and conduct such investigations as he deems necessary to render a decision and shall make such decision in writing within ten [10] consecutive working days.

Should the appointing authority or his designated representative not find in favor of the employee, the complaint may be submitted within fifteen [15] calendar days to the state personnel director. The director or his designee shall review the complaint and render a decision within fifteen [15] calendar days. If the decision

is not agreeable to the employee, an appeal may be submitted by the employee in writing to the commission no later than fifteen [15] calendar days from the date the employee has been given notice of the action taken by the personnel director or his designee. After submission of the appeal, the commission shall, prior to rendering its decision, grant the appealing employee and the appointing authority a public hearing, with the right to be represented and to present evidence. With respect to all appeals, the commission shall render its decision within thirty [30] days after the appeal is submitted. If the commission finds that the action against the employee was taken on the basis of politics, religion, sex, age, race or because of membership in an employee organization, the employee shall be reinstated to his position without loss of pay. In all other cases the appointing authority shall follow the recommendation of the commission which may include reinstatement and payment of salary or wages lost by the employee which may be mitigated by any wages the employee earned from other employment during a dismissed or suspended period.

If the recommendation of the commission is not agreeable to the employee, the employee, within fifteen [15] calendar days from receipt of the commission recommendation, may elect to submit the complaint to arbitration. The cost of arbitration shall be shared equally by the employee and the state of Indiana. The commissioner of labor shall prepare a list of three [3] impartial individuals trained in labor relations, and from this list each party shall strike one [1] name. The remaining arbitrator shall consider the issues which were presented to the commission and shall afford the parties a public hearing with the right to be represented and to present evidence. The arbitrator's findings and recommendations shall be binding on both parties and shall immediately be instituted by the commission."

The last section of the Act, I.C. 4–15–2–46 (Burns Code Ed.1974) makes provision for conflicting provisions and reads:

"It is hereby expressly provided that in case of conflict between any of the provisions of this act [4–15–2–1—4–15–2–46] and any provisions in any statute of the state of Indiana, including any act passed at the 82nd Regular Session of the General Assembly [1941], the provisions of this act shall supersede all conflicting provisions in such other statutes or acts and in all such cases of conflict, the provisions of this act shall govern."

Arguably, the additional requirement in 30 IAC 1–13–2(B)(2) (1979) which restricts the employee to the original text of the complaint is in conflict with I.C. 4–15–2–35 which does not disallow the employee from amending the original complaint. Assuming that 30 IAC 1–13–2(B)(2) is merely supplemental to and not in conflict with I.C. 4–15–2–35, the original may still be regarded as expanded because it was amended by the evidence presented before the Commission. We recognize that the judicially created law regarding the amendability of complaints, *Yunker v. Porter County Sheriff's Merit Bd.* (3d Dist. 1978) Ind.App., 382 N.E.2d 977, 981, might be irreconcilable with 30 IAC 1–13–2(B)(2) (1979). It does seem ironic that if 30 IAC 1–13–2(B)(2) is regarded as valid and binding on the Petitioners in the instant case, that they would be penalized for having *a narrow complaint.* The complaint's wording, in particular the word "given," was no doubt deliberately inserted by the Petitioners so as to be in compliance with 30 IAC 1–13–1's (1979) requirement that the complaint be initiated no later than ten (10) calendar days after the employee is notified of a change in his status of employment or after an unsatisfactory condition of employment is created. To comply with this requirement it is necessary for the employee to pinpoint a definite occurrence which will amount to a change in status or the creation of an unsatisfactory condition. To say that benefits were "given" complies with this requirement, whereas to say that benefits were announced or discussed etc. in all probability would not do so. These employees were thus in a Catch-22 situation: They needed to be spe-

cific about a change in status to come within the purview of 30 IAC 1–13–1, but are now being told that their complaint is too narrow, thus precluding relief, and that it cannot be broadened because of 30 IAC 1–13–2(B)(2). We will not on this ground deny relief. We hold, based upon *Yunker, supra,* that the complaint was amended, and that Petitioners fully complied with I.C. 4–15–2–35 (Burns Code Ed. 1974). If we assume arguendo that the employees are limited to their original complaints, we note that each complaint states, "lack of fringe benefits" and that lack of fringe benefits was the issue to be litigated before the Commission.

I.C. 4–22–1–18 (Burns Code Ed.1974) provides the standard for determining whether the Clinton Circuit Court exceeded the scope of judicial review. It states:

"On such judicial review such court shall not try to determine said cause de novo, but the facts shall be considered and determined exclusively upon the record filed with said court pursuant to this act [4–22–1–1—4–22–1–30].

On such judicial review, if the agency has complied with the procedural requirements of this act, and its finding, decision or determination is supported by substantial, reliable and probative evidence, such agency's finding, decision or determination shall not be set aside or disturbed.

If such court finds such finding, decision or determination of such agency is:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

(2) Contrary to constitutional right, power, privilege or immunity; or

(3) In excess of statutory jurisdiction, authority or limitations, or short of statutory right; or

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence, the court may order the decision or determination of the agency set aside. The court may remand the case to the agency for further proceedings and may compel agency action unlawfully withheld or unreasonably delayed.

Said court in affirming or setting aside the decision or determination of the agency shall enter its written findings of facts, which may be informal but which shall encompass the relevant facts shown by the record, and enter of record its written decision and order or judgment."

Appellants point to the following findings by the court in support of their assertion that the trial court made a de novo determination of the facts and thus exceeded their scope of review.

"Findings of Fact

. . . .

3. The dental insurance program was added in 1979 and was announced at a meeting of the State Personnel Board on May 17, 1979.

4. Medical and dental insurance coverage is denied to State employees who work in the County Welfare Departments in general and to the Petitioners employed in the Clinton County Welfare Department in particular.

. . . .

Conclusions of Law

. . . .

2. Failure to include the Petitioners in medical and dental insurance programs offered to other State employees is discriminatory and constitutes an unsatisfactory condition of employment within the pervue [sic] of I.C. 4–15–2–35.

. . . .

4. The complaint of the Petitioners, to wit: lack of medical and dental insurance benefits, having been fully tried before the Respondent Commission (as per Finding of Fact # 10), the Commission cannot now refuse to decide the issue presented because the original complaints of the Petitioners may have stated that said benefits were 'given' at the State Personnel Board meeting of May 17, 1979, when in fact medical insurance was a pre-existing program and dental insurance was *announced* at that meeting.

. . . .

6. There are no legal or accounting obstacles to providing medical and dental insurance benefits for County Welfare workers.

7. Administration by the State Personnel Division of separate pay plans for Welfare Department employees who work at the State level and those who work at the County level by excluding County level personnel from medical and dental insurance coverage is illegal."

To determine whether the trial court exceeded its scope of review, we must examine whether the Commission's findings and conclusions comport with case law requirements regarding the sufficiency of administrative agency's findings. In our case, the Commission's findings of fact do not give us cause for concern. However, the agency's conclusions of law are cursory at best. In *N.L.R.B. v. Temple-Eastex, Inc.* (5th Cir. 1978) 579 F.2d 932, 936, the court stated:

"Due process requires that the Board base its findings against a party only upon matters brought to the party's attention in the complaint or during the administrative hearing, and that are fully litigated." (citations omitted).

In *City of Evansville v. Southern Indiana Gas and Electric Co.* (2d Dist. 1975) 167 Ind.App. 472, 339 N.E.2d 562, the Court was guided by I.C. 8–1–3–1 (Burns Code Ed. 1971) which provides the appropriate standard of judicial review for the Public Service Commission. It sets out a two-tier standard of review:

"An assignment of errors that the decision, ruling or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling or order, and the sufficiency of the evidence to sustain the findings of facts upon which it is rendered."

The Court 339 N.E.2d at 571, 572 states: "While I.C. 8–1–3–1 contains no specific reference to the 'substantial evidence' test, the statute has been consistently interpreted to authorize reviewing·courts to set aside Commission findings of fact which are unsupported, on the whole record, by substantial evidence.... Moreover, the Indiana Supreme Court has clearly indicated that the 'substantial evidence' test encompassed by the statute is not a hybrid standard formulated specifically for review of Public Service Commission decisions, but *it is a standard from federal and state common law principles governing judicial review of administrative action.*" (emphasis added).

The court 339 N.E.2d at 572 clarifies the standard of review noting that the "substantial evidence" test cannot be used to test the "reasonableness" of the conclusions of the ultimate facts inferred by the agency from the finding of basic fact and that ultimate facts may be described generally as factual conclusions derived from basic facts. The court in *City of Evansville, supra,* states however, that the reasonableness of the agency's inference is within the scope of judicial review because this is a "question of law." In conclusion, the court held that the reviewing court in determining "substantiality" must consider evidence which is contrary to the challenged findings of basic fact as well as evidence which supports the finding.

Although the Clinton Circuit Court did not find that the agency's decision was unsupported by substantial evidence pursuant to 4–22–1–18(5) (Burns Code Ed.1974), instead holding that the Commission's decision denying petitioner's appeal was contrary to law, 4–22–1–18(1) (Burns Code Ed. 1974) "substantial evidence" language is found in the second paragraph of 4–22–1–18. This inclusion in 4–22–1–18 in addition to the "substantial evidence" language found in *City of Evansville, supra,* persuades us to utilize the tests articulated above.

*V.I.P. Limousine Service, Inc. v. Herider-Sinders, Inc.* (2d Dist.1976) 171 Ind.App. 109, 355 N.E.2d 441 involved the granting of a certificate of public convenience and necessity by the Public Service Commission. The Court in its discussion regarding its review of the Commission's order said:

"In certain instances to say that findings of basic fact are required is to say not enough. In some instances, as here, the ultimate fact may depend upon myriad factors which do not and cannot fit within an established or fixed set of essential elements. A mere recitation of the factors considered and found as fact may do no more to facilitate judicial review than a finding of the ultimate fact. It is thus appropriate to say that we need not only findings of basic facts but we must know how and why and to what purpose the administrative agency utilized those facts in reaching its ultimate conclusion. *A rational relationship between the facts found and the conclusion reached must exist and should be stated.* We need then, in addition to the findings of fact, a statement of the reasons for the agency's ultimate determination. See *Easley v. Metropolitan Board of Zoning Appeals* (2d Dist. 1974) [161 Ind.App. 501], 317 N.E.2d 185 at 192–193. That statement of reasons should embrace a reference to the basic facts found, relating those basic facts to the ultimate facts within a framework of the law which defines the issues to be decided, i.e., those issues which are disputed by parties." 355 N.E.2d at 445 (emphasis supplied).

Other than the impermissible limitation of the employees' complaints by the Commission to benefits which were "given" on May 17, there appears no rational relationship between the facts found and the conclusion reached. Accordingly, it was not erroneous for the trial court to find that the Commission's decision was contrary to law. Nor was it error for the Clinton Circuit Court to make "findings of fact" and "conclusions of law" because these findings and conclusions were limited to a determination made exclusively from the record. Additionally, as this was not the trial court's initial review, its allowable scope of review may be more broad than otherwise. *See State Dept. of Public Welfare v. St. Joseph's Hospital of South Bend, Inc.* (4th Dist.1979) Ind.App., 398 N.E.2d 1325.

■ Lastly, Appellants challenge the trial court's admission into evidence of the State Master Health Insurance Contract. The Court, on its own motion, requested Appellants to furnish it a copy of the contract under which State Employees are insured. It was not in the record filed with the trial court.

I.C. 4–22–1–18 (Burns Code Ed.1974) states:

"On such judicial review such court shall not try or determine said cause de novo, but the facts shall be considered and determined *exclusively upon the record* filed with said court pursuant to this act."

The document was produced and filed without objection on or about May 30, 1980. It provides that all active full time employees, appointed officials, and their dependents are covered thereunder except employees of State Universities and Teacher's Colleges.

The trial court's request for the State Master Health Insurance Contract violates I.C. 4–22–1–9 (Burns Code Ed.1974) which states:

"The transcript of testimony adduced and exhibits admitted together with the notice, all pleadings, exceptions, motions, requests and papers filed, other than briefs or arguments of law, *shall constitute the complete and exclusive record* of such hearing and determination of such agency and it shall be available to all parties for examination." (emphasis supplied).

Appellants cite *State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.* (1st Dist. 1981) Ind.App., 420 N.E.2d 1324, for the proposition that a court commits reversible error by admitting testimony and exhibits on judicial review which were not introduced at the administrative agency's hearing. However, here even though admission of the Insurance Contract was erroneous, it is not reversible because the evidence was only cumulative. *D. H. v. J. H.* (1st Dist. 1981) Ind.App., 418 N.E.2d 286. There is other evidence of record which establishes that all state employees are covered by health insurance.

For the above reasons, we conclude that the court did not exceed the scope of judicial review.

## II.

■ The second issue presented is whether the trial court's judgment is contrary to law in that the State is not obligated to provide medical and dental benefits to county welfare employees. We hold that the trial court was free to examine the applicable statutes to determine if the Commission's decision comports with the law.

The trial court found as was stipulated by the parties, that Petitioners are employed by the County Department of Public Welfare/Clinton County and are employees in the State service as defined by I.C. 4–15–2–3(a) (Burns Code Ed.1974). The court determined that failure to include the Petitioners in medical and dental insurance programs offered to other State employees is discriminatory and constitutes an unsatisfactory condition of employment within the purview of I.C. 4–15–2–35 (Burns Code Ed. 1974).

I.C. 4–15–2–1 (Burns Code Ed.1974) is the initial section of the State Personnel Act (Act) I.C. 4–15–2–1—4–15–2–46 (Burns Code Ed.1974). It sets forth the title and purpose of the Act and calls for liberal interpretation to effectuate those policies. It also uses the words "state employment" interchangeably with the words "state service." We hold therefore that these employees are state employees.

As in *County Council of Monroe County v. State ex rel. Monroe County Bd. of Public Welfare* (1st Dist. 1980) Ind.App., 402 N.E.2d 1285, our task is one of statutory construction. To the facts before us, we are required to apply various bodies of statutory law: I.C. 4–15–2–1 et seq. (Burns Code Ed. 1974) which is the State Personnel Act; I.C. 12–1–2–1 et seq. (Burns Code Ed. 1973) which governs the State Department of Public Welfare; I.C. 17–1–24–1 et seq. (Burns Code Ed.1974) which sets out the powers, duties, and the organization of

county councils; I.C. 19–10–4–1 et seq. (Burns Code Ed.1971) and I.C. 4–15–5–1 et seq. (Burns Code Ed.1974) which governs group insurance for public employees.

I.C. 12–1–2–3 (Burns Code Ed.1973) states:

"The state department is hereby charged with the administration or supervision of all of the public welfare activities of the state as hereinafter provided. The state department:

. . . .

(e) Shall provide services to county governments including the organization and supervision of county departments for the effective administration of public welfare functions, . . .

. . . .

(m) May, under such rules and regulations as may be prescribed by the state department, designate county departments to serve as agents of the state department in the performance of all public welfare activities in the county, and when necessary in the opinion of the state board, provide all or any part of the local administrative costs and/or cost of assistance."

I.C. 12–1–3–7 (Burns Code Ed.1973) designates the county director's duties, among them being the determination of compensation for assistants. This compensation is to be fixed

"within the salary ranges of the pay plan adopted by the Indiana personnel board and approved by the state budget committee and within the lawfully established appropriations . . . ."

At the time in question, I.C. 17–1–24–1 et seq. (Burns Code Ed.1974) was the organizational provision for county councils.[1] I.C. 17–1–24–18.1 (Burns Code Ed.1974) granted authority to the county council to fix salaries of assistants whose salaries were payable from any county fund. "Salaries" was defined to include "salaries, wages, rates of hourly pay, expense allowances, and all other forms of remuneration for services ren-

---

1. I.C. 17–1–24–1 to 17–1–24–50 incl. were repealed by Acts 1980, P.L. # 8, § 38, 171, 177, Acts 1980, P.L. # 211, § 14(a) and Acts 1980, P.L. # 212, § 10(b).

dered." The court in *Indiana Personnel Bd. v. Galloway* (2d Dist. 1976) 168 Ind.App. 238, 342 N.E.2d 903 held that a salary plan which provided schedules of rates of pay for merit employees of county welfare department employees separate and different from pay plans for employees of the state welfare department violated the Personnel Act. In *Galloway* it was argued that allowing the State to establish a minimum salary for county employees violated I.C. 17–1–24–18.1 and 17–1–24–18.2 (Burns Code Ed.1974) which authorized county councils to fix salaries of county employees. The Court held pursuant to I.C. 4–15–2–9(a) (Burns Code Ed.1971) that the State has the authority to establish a minimum salary for merit employees of county welfare departments. The Court relied upon 30 IAC 1–4–2's stated objective of guaranteeing "equal pay for comparable work." *State v. King* (4th Dist. 1980) Ind.App., 413 N.E.2d 1016, 1021, addressed the same issue and additionally held that the evidence was sufficient to support the trial court's conclusion that county employees were denied merit increases. The trial court reasoned that because the employees received merit increases on the lower county salary schedule, they were denied merit increases gauged by the applicable higher state salary schedule.

This precedent recognizes the policy consideration which, absent some other rational statutorily declared basis for differentiating between like employees, requires equal treatment.

A facet of Appellants' argument construes the State Personnel Act, I.C. 4–15–2–1—4–15–2–46 (Burns Code Ed.1974) so as to deny that the Act's scope may extend to insurance coverage. Because both the State Employees' Appeals Commission and the State Personnel Board derive their authority from the Act, the issue whether the Act can be considered to encompass insurance coverage is crucial. Appellants rely heavily upon *Indiana State Personnel Bd. v. Martin* (2d Dist. 1975) 167 Ind.App. 408, 338 N.E.2d 743, for the proposition that insurance benefits are conferred through state or county statutory permissive authority and not as "compensation" or "other incidents

of state employment" within the purview of I.C. 4–15–2–1 (Burns Code Ed.1974). However *Martin, supra*, involved the question whether housing and unused vacation time were reimbursible "benefits" within the disciplinary statute, I.C. 4–15–2–33 (Burns Code Ed.1974). The court held that housing was not a benefit, but that unused vacation time was a benefit, for which employees were entitled to reimbursement upon their reinstatement. Appellant's analogy is not without superficial appeal but must fail for the reason that "lost wages and benefits" as contemplated by I.C. 4–15–2–33 (Burns Code Ed.1974) which might have accrued during the suspension period, is less encompassing than "other incidents of state employment," I.C. 4–15–2–1 (Burns Code Ed. 1974), the statute with which we are concerned. Additionally *Martin, supra*, did not involve the question of discrimination. Support for the inclusion of insurance coverage within the Personnel Act's purview is contained in 1966 OAG 237. That opinion observed that public policy dictates broad adjudicatory jurisdiction by the Board so as to include any employer-employee dispute or grievance, stating:

> "Your inquiry essentially concerns the scope of the appellate jurisdiction of the Board. . . .
>
> Rule 13(A) and Burns § 60–1336 give the Personnel Board jurisdiction over all state employee grievances. The Board may not arbitrarily or summarily refuse an employee a hearing. It is not confined to hearing only grievances concerning employment status but must also consider questions involving employment conditions. The many and varied types of employment problems that arise defy giving examples. It can, however, be safely said that the Board's jurisdiction includes the adjudication of all those types of grievances that arise as an incident of the employer-employee relationship. Any area that may be the subject of labor-management relations is a proper subject of adjudication, if a grievance arises, by the Board."

We hold that the complaint procedure here utilized by the employees is broad enough to include the issue of insurance benefits. The State citing I.C. 5–10–8–1 (Burns Code Ed.Supp.1981) argues that there is a legal obstacle to the provision of benefits because these employees are not "immediately" employed by the State. I.C. 5–10–8–1 (Burns Code Ed.Supp.1981) effective April 1, 1980 states:

" 'Public employer' means the state or a local unit, including any board, commission, department, division, authority, institution, establishment, facility, or governmental unit under the supervision of either, having a payroll in relation to persons it immediately employs, even if it is not a separate taxing unit." [2]

The provision purports only to define "public employer." It does not purport to limit employee benefits to provision only the immediate employer. I.C. 5–10–8–5 demonstrates to the contrary by contemplating unified plans by two or more public employers:

"Two [2] or more local public employers, two [2] or more state public employers with the governor's approval, or the state by itself with the governor's approval and without respect to the entity for which the employees or employers are serving may establish a common and unified plan of group insurance for their employees, including retired local employees. The plan shall be effected through a trust, agency, or any other legal arrangement with careful accounting and fiscal responsibility."

We discern no statutory obstacle present in I.C. 5–10–8–1 which prevents insurance benefits be provided by the State to these employees.

The State argues that because these employees are county employees, the only obligation owed by the State with respect to health insurance is to reimburse the county

pursuant to I.C. 12–1–3–8 (Burns Code Ed. Repl.1981). This statute provides:

"The state shall reimburse each county to the extent of fifty percent [50%] of the amounts expended for public employee's retirement fund charges and for personal services in the administration of the duties imposed upon the county department under the provisions of this act [12–1–1–1—12–1–12–17] providing that such employment shall have been necessary for the administration of the duties imposed upon the county department by this act and the rules and regulations prescribed by the state department."

Acts 1979, P.L. No. 306, § 1 which provided the appropriation for the reimbursement for 1979–80 and 1980–81 provided:

"(1) *personal services* shall be construed to include all payments made as and for salaries and wages to any and all officers and employees of the state, either regular or temporary, also all payments made as and for compensation awards, special payments for expert service, and the employer's share of social security, *health insurance*, life insurance and retirement fund contributions;" (emphasis supplied).

The State contends that because Clinton County has presented no claim for health insurance provided by the county, the State has no obligation.

The fact that a county may provide health insurance to county employees and seek reimbursement from the State for a portion of the cost thereof does not necessarily mean that the employees here involved must look solely to the county for their health and dental needs. As heretofore noted, these employees are state employees and are entitled to the benefits afforded like employees.

### III.

Appellant's last argument is that the trial court's judgment is contrary to law

2. Although not in effect at the time of the earlier proceedings involved here, we note that I.C. 5–10–8–1 insofar as applicable to appellants' argument merely combines former I.C. 19–10–4–1 defining "public employer" in terms of entities of less than statewide authority, e.g. counties, and I.C. 4–15–5–1 defining the term in regard to the State and its boards, commissions etc.

because the Indiana Department of Administration (Department) was not a party to this action, thus precluding enforcement of the judgment against the State. They assert that the Department, rather than the Board, administers the fringe benefit and insurance programs, and as the Department was not a party to this appeal, the same should have been dismissed. I.C. 4–13–1–3 (Burns Code Ed.1974) sets forth the divisions of the Department as follows:

"The department shall consist of a general services division, *a personnel division*, a property management division, a data processing division, a public works division, an administrative analysis division, and a supply division." (emphasis supplied).

The words "personnel division" were deleted by amendment effective September 1, 1981. Appellants argue that insurance is in contract form, administered by the Department through the insurance division. However, I.C. 4–13–1–3 did not and does not make provision for an insurance division.

This appeal was brought at a time when the State Personnel Act was administered by the personnel division of the Department of Administration under the direction of the Commissioner. I.C. 4–13–1–11 (Burns Code Ed.1974), repealed by Acts 1981, P.L. 30, § 4, effective July 1, 1981. Under the present law, the State Personnel Act is administered by the State Personnel Department under the supervision of the State Personnel Director. I.C. 4–15–1.8–1 et seq. (Burns Code Ed.1982 Repl.). I.C. 4–15–2–11 (Burns Code Ed.1974) states that the State Personnel Director shall prepare and recommend to the State Personnel Board a pay plan for all employees. The Director, in establishing pay rates, is to give consideration to "other benefits received by employees." "Such pay plan shall take effect when adopted by the board and approved by the state budget agency." *See also* I.C. 4–15–2–5(b) (Burns Code Ed.1974). In I.C. 4–15–2–31 (Burns Code Ed.1974), the State Personnel Director is charged with certifying the payment of salary "or other compensation for such personal services." Personal services, by statute, has been

defined to include health insurance. Acts 1979, P.L. No. 306, § 1, *supra.* We conclude, based on I.C. 4–15–2–11 and I.C. 4–15–2–31, that the Board has a significant voice in pay plans for employees, such pay plans including "benefits" and "personal services." Even under the prior law, the Director of the Personnel Division of the Department of Administration could be appointed and removed only by agreement between the commissioner and the Board. I.C. 4–13–1–11 (Burns Code Ed.1974).

Because of the inclusive overlap of responsibility and authority as to matters involving employees of state government entities, we find the failure to include the parent, Department of Administration not fatal. It was sufficient that the agency most directly responsible for such matters, the State Personnel Board, was and is a party.

The judgment of the Clinton Circuit Court is affirmed.

BUCHANAN, C. J., concurs.

SHIELDS, J., concurs in result.