OPINION
 

 KIRSCH, Judge.
 

 Appellants-Plaintiffs Bruce H. Palin, Patrick Carroll, Thomas E. Linson, John L. Winter, and Woodard R. Smith (collectively “appellants”) appeal the trial court’s judgment upholding the determination of the State Employees’ Appeals Commission (“Appeals Commission”) that the appellants were not entitled to a recruitment and retention salary differential. They present three issues on appeal:
 

 I. Whether the decision to deny appellants a salary differential was arbitrary and capricious.
 

 II. Whether the decision to deny appellants a salary differential was without statutory authority.
 

 III. Whether the decision to deny appellants a salary differential violated appellants’ constitutional rights to equal protection and equal privileges.
 

 We affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 At the time this case was initiated, appellants were each branch chiefs with the Indiana Department of Environmental Management (“IDEM”). On February 1, 1994, while the appellants were employed with IDEM, former Governor Evan Bayh issued a statement in which he pledged to release monies “to fund a salary differential for recruitment and retention purposes and to improve staffing levels at IDEM” upon the passage of legislation providing funding for environmental permitting programs.
 
 Record
 
 at 120. In this statement, Governor Bayh expressed the need to give IDEM “the ability to attract and retain a highly qualified professional and technical staff.”
 
 Record
 
 at 120. Upon the passage of Senate Bill 417 by the 1994 Indiana General Assembly which provided for the funding of environmental permitting programs as requested by Governor'Bayh, he directed the State Budget Director to release the funds for the salary differentials.
 

 When the Indiana State Personnel Department (“State Personnel”) issued the salary differentials, it excluded appellants. Appellants filed a grievance with the Appeals Commission, challenging their exclusion from the salary differentials. A hearing officer issued findings of fact and conclusions thereon regarding State Personnel’s decision. Such findings set forth the stipulation of the parties concerning the manner in which State Personnel implemented the salary differentials as follows:
 

 “8. That the stipulations of the parties are as follows:
 

 
 *350
 
 1. Recruitment differential adjustments were implemented, effective June 5, 1994, for the professional/teehnical/environmental staff of the Indiana Department of Environmental Management (IDEM).
 

 2. The amounts of the resulting recruitment differentials ranged from 4.9% to 50%, depending upon the classification.
 

 3. Recruitment differentials were intended for the recruitment and retention of professional/technical/environmental staff.
 

 4. The recruitment differential adjustments resulted in the upward adjustment of the salary ranges for professional/technical/environmental staff of the IDEM.
 

 5. The branch chief classifications are in the Executive/Seientific/[Medical] job grouping.
 

 6. The recruitment differential adjustments were applied to the branch chief salary ranges.
 

 7. The recruitment differential adjustments were not applied to the incumbent branch chiefs whose salaries were already within the new salary range.
 

 8. The sole- issue before the hearing officer is whether the incumbent branch chiefs, whose salaries were already within the new salary range, should have received the recruitment differential adjustment.
 

 9. The State Personnel Department is responsible for the administering [of] the pay plan for employees of the State of Indiana.
 

 10. The branch chief positions require technical knowledge as well as administrative and management skills.
 

 11. The branch chiefs directly supervise virtually all the technical supervisors, and also certain senior technical staff positions.
 

 12. Several incumbent branch chiefs took voluntary demotions after the recruitment differential adjustments wer[e] applied. The effect of these demotions was the former branch chiefs received salary increases when they obtained the recruitment differential for the lower level position.
 

 13. Both preceding and subsequent to the recruitment differential adjustments, some subordinate staff members were being paid more than their supervising branch chiefs.
 

 14. Within the Indiana Department of Environmental Management, no other classification was given a recruitment differential adjustment that was not applied to all incumbents in that classification, regardless of their placement within the new salary range.
 

 15. Within the Indiana Department of Environmental Management, no other Exeeutive/Scientific/[Medical] classifications were given recruitment differential adjustments.
 

 16. Branch chiefs are merit service employees.”
 

 Record
 
 at 25-26.
 

 Based upon these findings, the hear- • ing officer recommended that the Appeals Commission deny appellants relief. The Appeals Commission adopted the hearing officer’s findings and followed her recommendation to deny appellants relief. Appellants sought judicial review, and the trial court upheld the Appeals Commission’s decision. Appellants now appeal.
 
 [1]
 

 DISCUSSION AND DECISION
 

 When reviewing the decision of an administrative agency, this court stands in
 
 *351
 
 the same position as the trial court.
 
 SSU Fed’n of Teachers v. Board of Directors, Madison Area Educ. Special Services Unit,
 
 656 N.E.2d 832, 835 (Ind.Ct.App.1995). A trial court may grant relief on judicial review upon finding that the agency action is: 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; 2) contrary to constitutional right, power, privilege, or immunity; 3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; 4) without observance of procedure required by law; or 5) unsupported by substantial evidence. IC 4-21.5-5-14;
 
 see also Department of Correction v. Civil Rights Comm’n,
 
 486 N.E.2d 612, 614 (Ind.Ct.App.1985),
 
 trans. denied.
 

 I. Arbitrary and Capricious
 

 The first question presented is whether the decision to deny appellants a salary differential was arbitrary and capricious. “An arbitrary and capricious administrative act is one which is willful and unreasonable, without consideration and in disregard of facts or circumstances in the case; the act is one without some basis which would lead a reasonable and honest person to the same conclusion.”
 
 Irwin R. Evens & Son, Inc. v. Board of Indianapolis Airport Authority,
 
 584 N.E.2d 576, 585 (Ind.Ct.App.1992).
 

 Appellants contend that it was arbitrary and capricious to deny them a salary differential under the present facts and circumstances because there is no reasonable basis to support such a decision. They assert that there is no practical difference between the requirements necessary to perform their job and the requirements necessary to perform a professional or technical job at IDEM. They also assert that the recruitment and retention of branch chiefs was marked with the same difficulty as the recruitment and retention of professional or technical employees at IDEM.
 

 The reasonable basis for State Personnel’s decision to deny appellants a salary differential is found in the language of Governor Bayh’s statement. Governor Bayh expressed the need to recruit and retain highly qualified professional and technical employees. Appellants are not professional or technical employees; they are executive employees.
 
 [2]
 
 The fact that some of appellants’ skills and qualifications overlap with the skills and qualifications of professional and technical employees does not make the decision to deny them a salary differential arbitrary and capricious. A person’s qualifications and skills are used differently depending upon whether the person is a professional or technical employee or whether the person is an executive employee. In light of the language Governor Bayh used in his directive, only professional and technical employees were to receive the differential. The decision to implement salary differentials in accordance with this directive was not arbitrary and capricious.
 

 As for appellants’ second assertion, that recruitment and retention problems existed with branch chiefs to the same extent as professional and technical employees, the trial court found that there was no evidence to support such an assertion. Appellants contend that the recruitment and retention problems in the branch chief positions are illustrated by Exhibit 5, consisting of a list of the number of vacancies within the various job classifications at IDEM, and by appellant Bruce Palin’s affidavit in which he claims to have “personal knowledge that the Indiana Department of Environmental Management has had difficulty retaining and hiring Branch Chiefs.”
 
 Record
 
 at 149. With respect to Exhibit 5, the trial court concluded that such document merely listed vacant positions; it did not state the reasons for those
 
 *352
 
 vacancies.
 
 Record
 
 at 413 (Conclusion No. 12). The trial court did not comment upon Palin’s affidavit, but did conclude that there was “no evidence that
 
 State Personnel
 
 found there was a recruitment or retention problem in the branch chief classification.”
 
 Record
 
 at 413 (Conclusion No. 11) (emphasis added). Appellants do not contend that either one of these conclusions was erroneous. Rather, their argument, in essence, is that Exhibit 5 and Palin’s affidavit should have been weighed differently. It is not the function of a reviewing court to reweigh the evidence.
 
 Department of Natural Resources v. Peabody Coal Co.,
 
 654 N.E.2d 289, 292 (Ind.Ct. App.1995). The trial court reached the correct conclusion that the appellants failed to demonstrate error in the Appeals Commission’s decision.
 

 Appellants also attack Finding No. 16 made by the Appeals Commission, contending that such finding was unsupported by the evidence. Finding No. 16 provides:
 

 “That the branch chiefs need technical knowledge only for supervisory purposes; there are no required duties that use technical expertise to perform in a technical manner. Petitioners must be able to understand what their subordinates do, why and how they do it, so Petitioners can formulate and implement reasonable, effective policies, plans, programs, and procedures.”
 

 Record
 
 at 27.
 
 [3]
 
 Appellants make several arguments attacking this finding based upon the State’s written job descriptions or “benchmarks” which they submitted to the Appeals Commission. Again, as a reviewing court, we may not reweigh the evidence.
 
 Peabody Coal,
 
 654 N.E.2d at 292. The gravamen of Finding No. 16 is that while Appellants may share the same technical knowledge with professional or technical employees, appellants’ job responsibilities are quite different and require different use of such knowledge. The evidence supports this finding. The decision to deny appellants a salary differential was not arbitrary and capricious.
 

 II. Statutory Authority
 

 Appellants next contend that the decision to deny them a salary differential was without statutory authority. They rely first on IC 4-15-2-11 which provides:
 

 “After consultation with the state budget agency, the [State Personnel] director shall prepare and recommend to the governor a pay plan for all employees holding positions for which compensation is not fixed by law. The pay plan shall include employees in the unclassified, as well as the classified service and shall provide, for each class of positions, a minimum and a maximum rate of pay and such intermediate rates of pay as the director considers necessary or equitable. In establishing such rates, the director shall give consideration to the experience in recruiting for positions in the state service, the prevailing rates of pay for the service performed, and for comparable services in public and private employment, living costs, maintenance or other benefits received by employees, and the state’s financial condition and policies. The pay plan shall take effect when approved by the state budget agency and accepted by the governor.”
 

 Appellants claim that the decision to deny them a salary differential constitutes a pay plan that does not comply with this statute for the same reasons they argue that the decision was arbitrary and capricious. Appellants specifically claim that State Personnel “looked” at the required statutory factors, but did not “consider” them in denying appellants the salary differential.
 
 Appellants’ Brief at
 
 23. We do not see the distinction between “looked” and “considered” for purposes of evaluating the statutory factors to determine whether appellants were to receive a salary differential. Having held that the decision to deny appellants a salary differential was grounded upon a reasonable basis and, therefore, was not arbitrary and capricious, and being presented with no additional reasons why the decision violates IC 4—
 
 *353
 
 15-2-11, we similarly hold that the decision was authorized by statute.
 

 Appellants next contend that State Personnel acted without statutory authority when it denied them a salary differential because such denial violated State Personnel’s own regulation. At the time State Personnel implemented the salary differentials, the applicable regulations provided in part:
 

 “(a) All regulations affecting administration of the pay plan shall be designed, in accordance with the intents and purposes of IC 4-15-2-1 of the state personnel act, as amended, to guarantee equal opportunities and equal incentives for entrance to the service, equal pay for comparable work in the several agencies of the state service, and opportunity for advancement according to fair standards of accomplishment.”
 

 Ind.Ajdmin.Code tit. 31, r. 2-4-2(a) (1992 ed.).
 

 Appellants first claim that State Personnel’s action violated this regulation because denying them a salary differential did not give them an opportunity for advancement. A fair reading of this regulation is that the reference to advancement refers to job status not salary level. In this regard, the Appeals Commission found that appellants were at the top of a job series.
 
 Record
 
 at 28 (Finding No.22). An employee at the top of a job series cannot advance any further within that series, and the denial of a salary differential cannot be said to affect his or her advancement when no advancement is possible. State Personnel’s decision to deny appellants a salary differential did not contravene the opportunity for advancement requirement of the regulation.
 

 Appellants next argue that State Personnel’s decision to deny them a salary differential violated the equal pay for equal work requirement of the regulation. In support of their argument, appellants cite
 
 Indiana Personnel Bd. v. Galloway,
 
 168 Ind.App. 238, 342 N.E.2d 903 (1976).
 
 Galloway
 
 held that a pay plan providing workers in the county welfare departments pay that was unequal to workers in the state welfare department violated the State Personnel Act. The trial court correctly distinguished
 
 Galloway
 
 on the ground that it involved unequal pay for employees in the same job classification.
 
 Record
 
 at 414 (Conclusion No. 14). Here, the employees who received the salary differentials were in a different job classification than appellants. Accordingly,
 
 Galloway
 
 does not control. Appellants’ statutory argument must fail.
 

 III. Constitutional Violation
 

 Finally, appellants claim that the decision to deny them a salary differential denied them their equal protection rights under the Fourteenth Amendment to the United States Constitution and the right to equal privileges under Article 1, Section 23 of the Indiana Constitution.
 
 [4]
 
 Article 1, Section 23 of the Indiana Constitution provides: “The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens.” As appellants acknowledge, “neither the constitutionality of a statute nor a rule are [sic] at issue, but rather the implementation of the pay plan in the form of recruitment and retention differentials has not been equal.”
 
 Appellants’ Brief
 
 at 27. Neither party discusses whether the equal privileges clause of the Indiana Constitution applies to actions of an administrative agency when the text of the clause refers only to actions by the General Assembly. While we have found no Indiana cases discussing the applicability of the clause to administrative agency action, this court has considered whether the textual reference to the General Assembly precludes constitutional challenges to the actions of the Indiana High School Athletic Association, a voluntary association. In
 
 Indiana High School Athletic Ass’n v. Avant,
 
 650 N.E.2d
 
 *354
 
 1164 (Ind.Ct.App.1995),
 
 overruled on other grounds Indiana High School Athletic Ass’n v. Reyes,
 
 694 N.E.2d 249 (Ind.1997), this court held that:
 

 “Since the Haas
 
 [5]
 
 decision, the supreme court has not limited application of Art. I, § 23 to actions of the general assembly. Therefore, when the state is sufficiently involved to treat decisive conduct as state action, Art. I § 23 applies.”
 

 Id.
 
 at 1169. The action of an administrative agency entails sufficient state involvement so that the agency’s decisive conduct may be treated as state action, and Article 1, Section 23 applies.
 

 A Section 23 analysis uses a single standard consisting of two requirements:
 

 “First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.”
 

 Collins,
 
 644 N.E.2d at 80. Courts must employ this standard while giving “substantial deference to legislative discretion.”
 
 Id.
 
 The challenger’s burden is “to negative every conceivable basis which might have supported the classification.”
 
 Id.
 
 (quoting
 
 Johnson v. St. Vincent Hosp., Inc.,
 
 273 Ind. 374, 392, 404 N.E.2d 585, 597 (1980)).
 

 The disparate treatment accorded by State Personnel’s pay plan is to give salary differentials to professional and technical employees but not to executive employees whose salary is already within the new range. As required by the first step of the
 
 Collins
 
 analysis, this disparate treatment is reasonably related to inherent characteristics which distinguish the classifications of employees. The Director of State Personnel determined that Governor Bayh’s reference to professional and technical environmental staff meant those employees whose “class requires technical science or engineering training, education or experience
 
 and
 
 provides technical expertise in administering the Environmental Management Act and other state environmental statutes.”
 
 Record
 
 at 125 (emphasis in original). While, as noted above, there may be some overlap between the qualifications and skills of professional and technical staff and the qualifications and skills of branch chiefs, branch chiefs are executive employees who are required to perform goal-making and supervisory functions, functions that are not required of professional and technical staff. The different requirements of the two employee classifications are inherent characteristics which distinguish branch chiefs from professional and technical staff. The disparate treatment of branch chiefs and professional and technical staff is reasonably related to these inherent characteristics because Governor Bayh’s directive indicated a need to recruit and retain highly qualified professional and technical employees in light of the pending legislation regarding environmental permitting programs. The employees who would be required to perform the technical aspects of a permitting program are the technical and professional staff, not the branch chiefs who would be required to undertake managerial and supervisory roles.
 

 As required by the second step of the
 
 Collins
 
 analysis, the preferential treatment is uniformly applicable and equally available to all persons similarly situated. All professional and technical staff received a salary differential. All branch chiefs who were already within the new salary range did not receive a salary differential. Thus, all persons similarly situated were treated the same.
 

 Because the disparate treatment is reasonably related to inherent characteristics distinguishing professional and technical employees from executive employees, and because all employees similarly situated were treated the same, the implementation of the pay plan excluding branch chiefs from receiving salary differentials does not violate Article 1, Section 23 of the Indiana Constitution.
 

 Affirmed.
 

 SULLIVAN and BAKER, JJ., concur.
 

 [1]
 

 . Appellants have not included a verbatim statement of the judgment in their brief as required by Ind. Appellate Rule 8.3(A)(4). While we have the discretion to affirm the trial court based upon appellants' omission, we may also exercise our discretion to reach the merits of their appeal.
 
 See Terpstra v. Farmers and Merchants Bank,
 
 483 N.E.2d 749, 753 (Ind.Ct.App.1985). With a cautionary note to counsel to avoid such omissions in the future, we elect to decide this appeal on the merits.
 

 [2]
 

 . While the parties stipulated that appellants were in the executive/scientific/medical job classification, the Record does not contain any definition of that classification. The job descriptions for branch chiefs provide that such employees are responsible for "establishment of branch level goals and objectives and the methodology to achieve those goals[,]” "coordination of work activities for numerous technical sections of 15 to 50 employees, delegation of specific job assignments to the subordinate supervisors and reviewing completed staff work[,]” and "other representative supervisory tasks.”
 
 Record
 
 at 128, 130. An executive is one who exercises administrative or managerial control. Webster’s Ninth New Collegiate Dictionary 434 (1986).
 

 [3]
 

 . Appellants' counsel misrepresents in her brief that Finding No. 16 consists only of the first sentence, because that is the only portion included in counsel's quotation of the finding.
 
 Appellants' Brief
 
 at 19-20.
 

 [4]
 

 . Appellants set forth the provisions of both the Fourteenth Amendment and of Article 1, Section 23, and state that while the two provisions are "opposite in language" they have "the same result.”
 
 Appellants’ Brief
 
 at 26. Appellants then advance an argument only under the Indiana Constitution. Our supreme court has held that claims under the two constitutional provisions are independent and must be analyzed separately.
 
 Collins v. Day,
 
 644 N.E.2d 72, 75 (Ind.1994). To the extent appellants are claiming a violation of their Fourteenth Amendment rights, they have waived such claim for failure to present any argument.
 
 Garrod v. Garrod,
 
 590 N.E.2d 163, 171 (Ind.Ct.App.1992).
 

 [5]
 

 . In
 
 Haas v. South Bend Community School Corp.,
 
 259 Ind. 515, 289 N.E.2d 495 (1972), the supreme court applied Article 1, Section 23 to the IHSAA.