**MADISON STATE HOSPITAL, Indiana Family and Social Services Administration, and State Personnel Department, Appellants–Respondents,**

v.

**Karen L. FERGUSON, Appellee– Petitioner.**

No. 09A02–0703–CV–259.

Court of Appeals of Indiana.

Oct. 9, 2007.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Jim Brugh, Logansport, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Appellants-respondents Madison State Hospital (the Hospital), Indiana Family and Social Services Administration (FSSA), and State Personnel Department (SPD) (collectively, the State) appeal the trial court's order awarding relief to appellee-plaintiff Karen L. Ferguson. The State argues that the underlying final determination of the State Employees' Appeals Commission (SEAC), which was in the State's favor, was neither arbitrary, capricious, an abuse of discretion, nor contrary to law. Finding that the SEAC did not erroneously conclude that the State's restructured pay plan for nurses was rational and proper, we reverse the judgment of the trial court.

### FACTS

During the relevant timeframe, Ferguson was a Nurse Supervisor 5 (Nurse Supervisor) at the Hospital. Nurse Supervisors exercise supervisory authority over Charge Nurse Supervisor 5s (Night Nurses) and, historically, Nurse Supervisors have been paid a higher salary than Night Nurses.

Nurse Supervisors and Night Nurses provide the same direct care to patients, but Nurse Supervisors have additional duties and greater responsibilities than Night Nurses. Specifically, Nurse Supervisors

work first shift but have 24–hour responsibility for seven days a week. When the director of nursing is gone, the [Nurse Supervisors] have chief clinical responsibility. When the service line manager is gone, the [Nurse Supervisors] have the chief administrative responsibility. The scope extends for 24 hours in a day.

Appellants' App. p. 30. In contrast, the Night Nurses' duties are limited to their respective shifts. Furthermore, Nurse Supervisors evaluate the performance of, discipline, advise, and supervise the Night Nurses.

In 1999, the State concluded that it had a recruitment and retention problem in all nursing positions statewide. The State was especially concerned about recruitment and retention of nurses willing to work the night shift. Consequently, it conducted a study based on national and local market surveys to determine, among other things, what incentive needed to be added to the Night Nurse salary to ensure that the State could continue to fill the position. As a result, the year 2000 pay range for Nurse Supervisors was $43,316 to $60,320 [1] and the pay range for Night Nurses was $49,036 to $65,356.[2] The SPD study had revealed that local markets paid a premium for evening nurses; consequently, SPD decided that the State would also pay such a premium. Moreover, the market data revealed that as the turnover and vacancy rates for Nurse Supervisors were decreasing, the turnover and vacancy rates for Night Nurses were increasing.

During the spring of 2000, Ferguson and six other Nurse Supervisors for the Hospital or Logansport State Hospital filed separate complaints with the SEAC, arguing that the 2000 pay scale was improper, inasmuch as it potentially resulted in Night Nurses being paid more than Nurse Supervisors. On May 23, 2000, the SEAC consolidated the complaints. An administrative law judge (ALJ) conducted a trial on the consolidated complaints on April 17, 2001, and on July 29, 2003, the ALJ entered findings of fact and conclusions of law granting the complainants their requested relief. After the State appealed, on December 23, 2003, the SEAC accepted the ALJ's factual findings but reversed the ALJ's conclusions, denying the complainants relief.

On January 22, 2004, the complainants sought judicial review of the SEAC's decision. Following a hearing, on May 31, 2005, the trial court seemingly—though not explicitly—reversed the SEAC's decision and remanded to the agency for further proceedings:

> . . . this Court concludes that the evidence before the [SEAC] is not such that a reasonable person would reach the same conclusions. The new salary schedule, without a change of duties, results in different relative compensation for the Petitioners. They are now being compensated at a lower level while continuing to provide supervisory services over the classification that is now being compensated at a higher level. It makes no sense.

\* \* \*

Indiana Code 4–15–2–1, which introduces the State Merit Employment System, requires that the State of Indiana have a personnel system based on merit and scientific method related to the compensation of employees. The system of

---

1. This range represented an increase from the 1999 pay range for Nurse Supervisors of $34,086 to $50,440.

2. This range represented an increase from the 1999 pay range for Night Nurses of $32,994 to $48,698.

compensation adopted in the instant matter does not, in the opinion of this court, meet that requirement. Both categories at issue consist of professional employees who are educated as nurses. The [Nurse Supervisors] were historically paid in a higher salary range [than the Night Nurses]. The Court concludes that the change which resulted in a reversal of the salary range of the two categories of nurses prejudiced the petitioners.

In accordance with Indiana Code 4–21.5–5–15 the Court now remands this case to the [SEAC] for further proceedings.

Appellants' App. p. 14–15.

Following remand to the SEAC, six of the seven nurses settled with the State; thus, Ferguson is the only remaining petitioner. Following briefing and oral argument, on April 25, 2006, the SEAC voted to adopt the State's proposed findings of fact and conclusions of law. Among other things, the SEAC found as follows:

4. The [Nurse Supervisor] and [Night Nurse] classifications are both in the SAM PAT (Supervisor and Managers of Professional, Administrative, and Technical) job category and both at the same skill level of SAM PAT 5.

\* \* \*

6. The difference between the pay plans for the two classifications is a result of relative recruitment differentials for each classification.

7. The higher recruitment differential for [Night Nurse] was established using the higher market value of nursing personnel on the evening/night shift.

8. Another basis for the higher [Night Nurse] recruitment differential was that the [Night Nurse] is the highest-ranking manager and the highest-ranking licensed health care professional present

and on duty at the hospital during evenings and nights.

9. Both the difference in the duties and the relative market value of the work are rational bases for the difference in recruitment differentials for Petitioner's classification and the [Night Nurse] classification.

\* \* \*

11. Petitioner has not presented a viable legal theory on which to base her claim.

12. The authority to amend the State's pay plan rests with the Governor, the [SPD], and the State Budget Agency. . . .

13. Had plaintiff proven a violation of the equal pay provision in 31 IAC 2–4–2, the remedy would be to adjust Petitioner's salary to that of the comparator.

*Id.* at 131–32.

On May 17, 2006, Ferguson filed a second petition for judicial review, arguing that the SEAC had erroneously found in the State's favor on remand. Following a September 29, 2006, oral argument, the trial court found in Ferguson's favor on January 10, 2007, again remanding to the SEAC for further proceedings:

This Court has reviewed the supplemental agency record, has considered the pleadings filed by the parties, has considered the arguments made before this Court by the attorneys, and has carefully reviewed the Findings of Fact, Conclusions of Law, and Final Order issued by SEAC on April 25, 2006. After that review and consideration, this Court's prior conclusion previously issued on May 31, 2005, has not changed.

This Court is being asked by [Ferguson] to order SEAC to approve the prior decision of [the ALJ], adopt the mathematical reasoning in that decision, and apply it to Petitioner Ferguson. The

Court declines that request. Although the approach of [the ALJ] has the advantage of being mathematically consistent with the prior relationship between the two categories of nurses, SEAC is not compelled to adopt that particular approach on remand. This Court determines that the matter be remanded to SEAC to determine an appropriate remedy which addresses the conclusion of this Court in the May 31, 2005 Order that the Petitioner's [sic] were prejudiced by the reversal of the salary range for the two categories of nurses. SEAC is in the best position to determine how to fashion an appropriate remedy. The proposal by [the ALJ] is merely one approach that SEAC may consider.

Therefore, in accordance with Indiana Code 4–21.5–5–15 the Court now remands this case to [the SEAC] for further consideration.

*Id.* at 9. On January 17, 2007, Ferguson filed a request for clarification in the trial court, asking that

the Court clarify what other approaches, beyond the mathematical approach of [the ALJ], there are to affording relief in this matter. While [Ferguson] understands that this Court has made its determination and her request here may amount to a request for an advisory opinion, she believes it is reasonable to seek such clarification and further specification of what might be other appropriate remedies for her for the reason that, during the recent remand of this Court's decision to SEAC, SEAC's Chief Judge Tim Rider said: "If Judge Perrone is going to send this back to us again, please have him tell us what to do."

*Id.* at 10. On January 24, 2007, the trial court conducted a telephonic conference with the parties to discuss the request for clarification. The substance of that discussion is not discernible from the appellate record. On February 9, 2007, the State filed its notice of appeal of the trial court's January 10, 2007, order.

## DISCUSSION AND DECISION

As a threshold matter, we acknowledge the State's argument that the SEAC properly concluded and the trial court improperly ignored the conclusion that only the Governor, the SPD, and the State Budget Agency are authorized to amend the State's Executive branch pay plan, dismissing Ferguson's petition as a result. We will assume for the sake of argument only that the SEAC has the authority to offer Ferguson the relief she requests, but *see Ind. Dep't of Envt'l Mgmt. v. West*, 838 N.E.2d 408 (Ind.2005), *Fromuth v. State ex rel. Ind. State Employees' Ass'n, Inc.*, 174 Ind.App. 280, 367 N.E.2d 29 (Ind.Ct. App.1977), and proceed to address the underlying issue, namely, whether the State properly structured its pay plan such that Night Nurses can conceivably earn a higher salary than Nurse Supervisors.

Judicial review of an administrative action under the State Personnel Administration Act is governed by the Administrative Orders and Procedures Act. Ind.Code § 4–21.5–5–1 et seq. Specifically, our standard of review has been described as follows:

we conduct our review [of a final agency determination] solely to determine whether the agency's decision was supported by substantial evidence, whether the decision was arbitrary or capricious, or whether the decision was in violation of any constitutional, statutory, or legal principle. The party seeking relief from an agency decision bears the burden of proof to disclose an error warranting reversal. This court is prohibited from reweighing the evidence and must accept the facts as determined by the administrative body. Additionally, we pay due deference to the interpretation of a statute by the administrative agency

charged with its enforcement in light of its expertise in its given area.

*State Employees' Appeals Comm'n v. Barclay*, 695 N.E.2d 957, 959–60 (Ind.Ct.App. 1998) (internal citations omitted).

We will set aside the parties' debate about whether Nurse Supervisors and Night Nurses require the same set of skills, assuming for argument's sake that there are different, all be they overlapping, skill sets required for the two positions. Both jobs are in the SAM PAT 5 category, which Ferguson argues, with no elaboration, is "just a label that means nothing. . . ." Appellee's Br. p. 29. To the contrary, it indicates that, though the positions are in different classifications, the State considers the two jobs to be in the same basic category. Reply Br. p. 3.

Even working under the assumption that Nurse Supervisors are slightly above Night Nurses in the State job hierarchy, however, the State presented sufficient evidence in support of its pay plan such that we cannot say that the SEAC arrived arbitrarily or capriciously at its conclusion. Specifically, the State undertook a data analysis of national and local market surveys, which highlighted the high turnover rate of Night Nurses and the difficulties experienced in recruiting people to fill that position. On the other hand, the turnover rate for Nurse Supervisors had decreased and the State did not determine that there were significant obstacles preventing sufficient recruitment for that position. Based on that data, therefore, the State increased the recruitment differential—and, thereby, the salary—for Night Nurses. Appellants' App. p. 104–05. Put simply, the State concluded—based on data that Ferguson does *not* dispute—that it needed to acknowledge the higher market value of Night Nurses by increasing the salary range for that position. Contrary to the trial court's conclusion that this result "makes no sense," *id.* at 15, we find that it

makes perfect sense. Given this rationale, we find that the SEAC did not abuse its discretion or act arbitrarily and capriciously by denying Ferguson's petition.

Ferguson does not argue that the State's interpretation of the market study is flawed, nor does she contend that the pay plan will not achieve the State's goal of increasing recruitment and retention of Night Nurses. Rather, she argues that because Nurse Supervisors supervise Night Nurses, it is necessarily true that Nurse Supervisors should earn a higher salary. Although as a general rule, it is likely true that supervisors earn more income than their subordinate employees, we are unwilling to say as a matter of law that the State can *never* deviate from that pay structure. Under certain circumstances, such as those presented here, the State may discover, based on the realities of the job market or other factors, that it needs to offer incentives to fill the underling positions. When that occurs, and when there is data and a rationale to support the decision, the State should have the freedom to do that which will be in the best interest of the citizens and the job force. Here, that translates into a possibility that a given Nurse Supervisor will earn a lower salary than a Night Nurse in her charge. Although it may seem inequitable to the Nurse Supervisor, it is a rational and appropriate course for the State to take.

We next turn to this court's decision in *Palin v. Indiana State Personnel Department*, 698 N.E.2d 347 (Ind.Ct.App.1998). In *Palin*, then-Governor Evan Bayh expressed a need to give the Indiana Department of Environmental Management (IDEM) the ability to attract and retain a highly qualified professional and technical staff. *Id.* at 349. To that end, the State decided to implement a salary differential for recruitment and retention purposes. When the SPD issued the salary differential, it excluded a number of IDEM em-

ployees, who filed a complaint with the SEAC challenging their exclusion. The parties stipulated that "[b]oth preceding and subsequent to the recruitment differential adjustments, some subordinate staff members were being paid more than their supervising branch chiefs." *Id.* at 350. The SEAC denied the employees relief and, on appeal, we affirmed the SEAC's decision, reasoning as follows:

> Governor Bayh expressed the need to recruit and retain highly qualified professional and technical employees. Appellants are not professional or technical employees; they are executive employees. The fact that some of appellants' skills and qualifications overlap with the skills and qualifications of professional and technical employees does not make the decision to deny them a salary differential arbitrary and capricious. A person's qualifications and skills are used differently depending upon whether the person is a professional or technical employee or whether the person is an executive employee. In light of the language Governor Bayh used in his directive, only professional and technical employees were to receive the differential. The decision to implement salary differentials in accordance with this directive was not arbitrary and capricious.

*Id.* at 351 (footnote omitted). Here, similarly, the nurses had overlapping skills and qualifications and the undisputed evidence established that the State was experiencing difficulty in recruiting and retaining Night Nurses. Given the undisputed data, it is apparent that the SEAC's decision was not arbitrary and capricious.

 As to whether the SEAC's decision was contrary to law, Ferguson first directs our attention to Indiana Code section 4–15–2–1, which provides that the personnel system must be "based on merit and scientific methods relating to," among other things, compensation of employees. Ferguson argues that this statute prohibits the State from compensating Night Nurses at a higher rate than Nurse Supervisors. As we have already found, however, the State's restructure of the pay plan *was* based on scientific methods, namely, the analysis of data resulting from the State's market survey. And inasmuch as there is a salary range for each position, the pay plan offers opportunity for an individual to receive merit-based raises. Consequently, this statute does not lead to a conclusion that the SEAC's decision was contrary to law.[3]

 Finally, Ferguson argues that she was impermissibly demoted without cause as a result of the restructured pay plan. *See* I.C. 4–15–2–24 (explaining that a demotion may occur only in accordance with the procedure for dismissal). "Demotion," however, is "any change of a regular employee from a position in one class to a position in a class of a lower rank." *Id.* Ferguson's job was not changed in class.

Moreover, our court has considered and denied the claim of State employees whose positions and salaries were reclassified such that their pay was not reduced but they lost the possibility of future merit or step increases within their job classifications. *Heyne v. Mabrey,* 178 Ind.App. 610, 611–12, 383 N.E.2d 464, 465–66 (Ind.Ct. App.1979). The *Heyne* court explained that

> demotion and reclassification are not synonymous, regardless of the similari-

---

**3.** And in any event, we cannot conclude that this precatory language creates any substantive right or guarantee to any particular employee a particular salary in general or in comparison to other employees. Moreover, it has been held that the State Personnel Act does not confer a private right of action. *Americanos v. State,* 728 N.E.2d 895, 897–98 (Ind.Ct.App.2000).

ties between the consequences flowing therefrom. If the reduction in grade had been accomplished by the appointing authority, it could be said to be a demotion within the meaning of I.C. 4–15–2–24. However, where the change in status is brought about through a general reclassification by the State Personnel Board, it cannot be considered a demotion.

*Id.* at 613, 383 N.E.2d at 466–67. The court further noted that the plaintiffs had suffered neither a salary reduction, a change in duties, nor a concrete injury. Here, *Ferguson got a raise.* Her duties did not change. Her only complaint is that it is possible that Night Nurses might earn more than she does, and that does not rise to the level of a concrete injury such that it could reasonably be concluded that she was impermissibly demoted. Thus, we cannot conclude on this basis that the SEAC's decision was contrary to law.

As a final aside, we acknowledge the parties' dispute regarding the propriety of the SEAC's action on remand following the trial court's review of the agency's first determination. Given that the trial court's disposition of the case and directions to the agency were so unclear in both orders that *Ferguson* requested a clarification in which she set forth the SEAC's plea that " '[i]f Judge Perrone is going to send this back to us again, please have him tell us what to do,' " appellants' app. p. 10, we cannot conclude that any of the parties or the SEAC proceeded improperly.

The judgment of the trial court is reversed.

BAILEY, J., and VAIDIK, J., concur.